UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    *     CRIMINAL DOCKET

VERSUS                                      *     NO. 05-130

CHERLYN ARMSTRONG SCHERER PREJEAN, ET AL    *     SECTION "L"

**ORDER AND REASONS**

Before the Court are some eleven motions of Defendant Cherlyn Armstrong Prejean
("Ms. Prejean") and the corporate Defendants.  These motions came on for hearing with oral
argument on Friday, March 10, 2006.  For the following reasons, Defendants' Joint Motion to
Exclude Evidence of Prior Arrest and of Nursing License Suspension (Rec. Doc. No. 195) is
GRANTED IN PART and DENIED IN PART.  The Court RESERVES RULING until trial upon
Defendants' Joint Motion to Require Production of Witnesses (Docs. 193 and 248).  Defendants'
Joint Motion for an Order Limiting the Government's Trial Evidence Based On the Destruction
of Records by Hurricane Katrina (Doc. 256) is DENIED, with reservation of Defendants' rights
to challenge specific uses of the evidence at trial.  Defendants' Joint Motion to Strike Surplusage
from the Superseding Indictment (Doc. 247) is DENIED, with the understanding that the parties
will develop a summary of the indictment for use at trial.  Defendants' Joint Motion to Dismiss
Count One as Duplicitous, or Alternatively, to Strike Portions of Count One Based On the
Statute of Limitations (Doc. 249) is DENIED.  Defendants' Joint Motion for a Pretrial
Determination of the Standard for Criminal Liability Under 21 U.S.C. § 841 (Docs. 192 and 250)
is DENIED.  Defendants' Joint Motion for Relief Based On *Gonzales v. Oregon* (Doc. 251) is
DENIED.  Defendants' Joint Motion to Dismiss Based On the Inapplicability and/or Vagueness
of 21 U.S.C. § 841 (Docs. 194 and 246) is DENIED.

## I.  Factual and Procedural Background

This case arises from an alleged conspiracy involving Cherlyn Armstrong Scherer Prejean, the owner of three pain management clinics and two pharmacies in the New Orleans area.  Made defendants are Ms. Prejean, the various clinics and pharmacies, and three physicians who were employed at the clinics.  The government alleges that the Defendants conspired to distribute and dispense prescription pain medication without medical necessity and outside the scope of professional practice, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.  In a Superseding Indictment filed on January 13, 2006, the government has additionally alleged that the Defendants conspired to launder money, in violation of Title 18, United States Code, Section 1956(h).

On April 12, 2005, pursuant to warrants issued by the DEA, the government seized the Defendants' bank accounts, vehicles, cash, and other assets, and placed notices of lis pendens on eleven parcels of Defendants' property.  In June 2005, Defendants asked the Court to release all or a portion of the seized funds, and alleged that they have no assets other than those seized with which to pay the counsel of their choice and their necessary living expenses.  In July 2005, this Court held an evidentiary hearing to determine whether some or all of the Defendants' assets were seized without probable cause.  In this hearing, the parties presented some of the evidence which presumably will be used at trial.

On August 4, 2005, the Court ordered that $300,000 should be released to Defendants for payment of attorneys' fees.  No amount was released for payment of living expenses.  The government released these funds to defense counsel to be held in trust for Defendants pursuant to

the Court's Order of August 16, 2005.[1]  On August 17, 2005, Magistrate Judge Louis Moore removed the home incarceration and electronic monitoring conditions of Ms. Prejean's bond in order for Ms. Prejean to work outside of her home.  Additionally, on October 21, 2005, the Court granted Defendant Cherlyn Armstrong Prejean's Motion to Modify Bail Conditions, which permitted Ms. Prejean to seek reinstatement of her license from the Louisiana State Board of Nursing.

During Hurricane Katrina, the government stored Defendants' patient files and business records in a building used by the Drug Enforcement Administration ("DEA") in Metairie, Louisiana.  This building suffered damage due to the storm, and some of the patient files were damaged as well.  On January 19, 2006, upon motion of the Defendants, the Court held an evidentiary hearing to determine the extent of the damage and whether the government acted in bad faith in destroying some of the records.

A jury trial is set in this matter for July 10, 2006.  In anticipation of trial, Defendants have submitted eleven pretrial motions, and the government has responded to these motions. The Court shall now address the merits of Defendants' motions.

## II.  The Defendants' Motions

Defendants have filed three general types of motions – evidentiary motions, motions regarding the superseding indictment, and motions to determine legal standards prior to trial. These motions are as follows:

---

[1] Defendants filed a Joint Motion for Reconsideration of the Court's ruling on attorneys' fees.  The motion was denied on October 21, 2005.

**Evidentiary Motions**

1.     Defendants' Joint Motion to Exclude Evidence of Prior Arrest and of Nursing

License Suspension, filed December 19, 2005 (Doc. 195).

2.     Defendants' Joint Motion to Require Production of Witnesses, filed December 19,

2005 (Doc. 193) and February 13, 2006 (Doc. 248).

3.     Defendants' Joint Motion for an Order Limiting the Government's Trial Evidence

Based On the Destruction of Records by Hurricane Katrina, filed February 27,

2006 (Doc. 256).

**Motions Relating to the Superseding Indictment**

4.     Defendants' Joint Motion to Strike Surplusage from the Superseding Indictment,

filed February 13, 2006 (Doc. 247).

5.     Defendants' Joint Motion to Dismiss Count One as Duplicitous, or Alternatively,

to Strike Portions of Count One Based On the Statute of Limitations, filed

February 13, 2006 (Doc. 249).

**Motions Relating to Legal Standards at Trial/Motion to Dismiss**

6.     Defendants' Joint Motion for a Pretrial Determination of the Standard for

Criminal Liability Under 21 U.S.C. § 841, filed December 19, 2005 (Doc. 192)

and February 13, 2006 (Doc. 250).

7.     Defendants' Joint Motion for Relief Based On *Gonzales v. Oregon*, filed February

13, 2006 (Doc. 251).

8.     Defendants' Joint Motion to Dismiss Based On the Inapplicability and/or

Vagueness of 21 U.S.C. § 841, filed December 19, 2005 (Doc. 194) and February

13, 2006 (Doc. 246).

**A.  Evidentiary Motions**

1.      **Defendants' Joint Motion to Exclude Evidence of Prior Arrest and of Nursing License Suspension (Doc. 195)**

In this motion, Defendants ask the Court the exclude evidence of Ms. Prejean's September 2000 arrest for illegally transporting scheduled substances without a license, Ms. Prejean's November 19, 2004 Consent Judgment with the Louisiana State Board of Nursing, and the June 2005 suspension of her nursing license.  Defendants argue that these incidents are irrelevant and unduly prejudicial in the present case.  The government opposes exclusion of this evidence, and argues that the evidence is highly relevant to show Ms. Prejean's allegedly unusual methods in running her pain clinics.

a.      **September 2000 arrest**

In September 2000, Ms. Prejean was under investigation by a joint task force of state and federal DEA and other law enforcement officials.  Ms. Prejean was arrested for illegally transporting controlled substances:  she was carrying approximately 1,639 dosage units of prescription drugs in her personal vehicle from her house to the clinics.  Also, on that date, the clinics possessed approximately 14,879 dosage units of controlled substances in violation of DEA regulations.  Ultimately, the state refused the charges against Ms. Prejean, and nothing came of this arrest.  Defendants argue that this conduct is irrelevant to the instant charges.

However, the government alleges that this arrest is highly relevant in that it involves conduct of the Defendant during the period covered by the indictment.  The government contends that part of its case against Ms. Prejean is her unorthodox handling and distribution of

prescription pain medication.  Moreover, the government alleges that this transportation was not an isolated incident, but was part of Ms. Prejean's way of doing business at the time.  The government argues that this arrest is evidence of a pattern of conduct by Ms. Prejean to dispense these drugs outside the scope of legitimate medical practice.

Rule 609 of the Federal Rules of Evidence permits introduction of prior convictions under the specific circumstances listed in that rule.  By the use of the term "conviction," the rule excludes arrests from admission as evidence at trial.  "Typically, evidence of an arrest may not be used for impeachment of a witness; only evidence of convictions is permitted."  *United States v. Garza*, 754 F.2d 1202, 1206 (5th Cir. 1985).  *See also NLRB v. Jacob E. Decker & Sons, Inc.*, 569 F.2d 357, 364 and 364 n.7 (5th Cir. 1978) (stating that "[o]nly convictions are admissible to impeach a witness" and noting that arrests are admissible to show the bias of a witness, in appropriate circumstances).

However, Rule 404(b) of the Federal Rules of Evidence permits the introduction of "other crimes, wrongs, or acts" if they demonstrate "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" provided that the party offering such evidence gives pretrial notice to the opponent that the party intends to introduce such material.  The district court has broad discretion to admit evidence under this rule.  *United States v. Bloom*, 538 F.2d 704, 708 (5th Cir. 1976).  The trial court must ensure that the evidence is offered for a legitimate purpose under the rule and meets the standard of Rule 403 regarding relevance.  *Id.*

In addition, an arrest or evidence of other related criminal activity that occurs during the period in question in the indictment can be considered intrinsic, rather than extrinsic, evidence,

and as such the evidence is admissible if its probative value outweighs the prejudice to the defendant under Rule 403. *Id.* at 707.  In *Bloom*, the defendant had been convicted of distribution of heroin after two undercover agents procured the heroin through several controlled buys. *Id.* at 706.  At trial, the agents testified regarding conversations they had with the defendant during the transactions at issue where the defendant admitted that he also distributed marijuana and cocaine. *Id.*  The trial judge instructed the jury that the defendant was not charged with any crime related to the marijuana and cocaine. *Id.* at 706-07.  The Fifth Circuit upheld the admission of the testimony concerning other criminal acts, finding that "the evidence of Bloom's unindicted activities 'was inevitably a part of the background facts surrounding the commission of the crime[.]'" *Id.* at 707 (citing *United States v. Nunez*, 370 F.2d 538, 539 (5th Cir. 1967) and other cases using the "background facts" standard).  Because the evidence "served merely to complete the agents' accounts of their dealings" with the defendant, "it is not the kind of evidence to which the general rule excluding evidence of other offenses applies." *Id.*

Thus, the government argues that the September 2000 arrest formed part of the conspiracy itself in this case, and should be admitted as intrinsic evidence, either as "background facts" or part of the overt acts of the conspiracy.  Alternatively, the government argues that the evidence should be admitted under Rule 404(b)'s "other crimes, wrongs, or acts" exception.

At oral argument, Defendants stated that they had no objection to introduction at trial of the facts leading up to the arrest; however, mention of the traffic stop and the arrest would be prejudicial, they argued.  The Court agrees with the Defendants in part.  Evidence of the arrest itself would be prejudicial at trial because the arrest did not lead to formal charges.  However, the fact that Ms. Prejean was stopped by police for transporting these controlled substances, and

the circumstances leading to that traffic stop, are relevant and not unduly prejudicial.
Defendants have the opportunity to argue that the stop is irrelevant because no charges were ever
accepted.

        **b.**        **November 19, 2004 Consent Judgment**

      In November 2004, the Louisiana State Board of Nursing entered into a Consent
Judgment with Ms. Prejean.  In the Consent Judgment, Ms. Prejean acknowledged three
violations of the Nurse Practice Act stemming from her arrest in September 2000 and her
conduct of the clinics in 1998, 2001, and 2002.  Ms. Prejean admits that she transported
prescription drugs without authority to do so, failed to report her arrest to the Board, failed to
keep a proper inventory of prescription drugs in her possession, failed to ensure patient safety by
the lack of a method to avoid repeat visits and overlapping prescriptions, and failed to ensure the
physicians working for her had the time necessary to properly assess problems and counsel
patients.  It does not appear that the Consent Judgment revoked Ms. Prejean's nursing license:[2]
she was fined and threatened with suspension of her license for failure to comply with the
Judgment.

      Defendant argues that the Consent Judgment is highly prejudicial to Ms. Prejean and is
based upon the September 2000 arrest, which Defendants argue should be excluded as irrelevant.
Defendants argue that the Consent Judgment reaches legal conclusions under the Nurse Practice
Act.  According to Defendants, these conclusions would usurp the role of the jury and would be
confusing to the jury because Ms. Prejean is not charged with violations of that Act.

---

    [2] While in their memoranda the parties asserted that Ms. Prejean's nursing license was
revoked in 2004, that appears to be incorrect, as the parties stated during oral argument.

However, the government contends that this Consent Judgment is highly relevant evidence as an admission of Ms. Prejean under Rule 801(d)(2) of the Federal Rules of Evidence. Further, the government contends that this is not extrinsic evidence under Rule 404, but rather is evidence inextricably intertwined with the evidence used to prove the crime charged. Moreover, the government argues that the evidence demonstrates Ms. Prejean's knowledge of a violation of law in the practice of her clinics. Because this Consent Judgment provides context of the events in the indictment, the government argues that the evidence is relevant and admissible.

The Court agrees with the government. The Consent Judgment is admissible under Rule 801(d)(2) and Rule 404(b) of the Federal Rules of Evidence as an admission of a party opponent and as evidence of knowledge and/or plan. Any reference to the 2000 arrest may be redacted in keeping with the Court's ruling related to that arrest.

###    c.        June 2005 suspension of Ms. Prejean's nursing license

This suspension occurred after Ms. Prejean's arrest and arraignment for the present offense, and was a direct consequence of that arrest. Defendants argue that this evidence is only prejudicial and has no relevance, as Ms. Prejean has not been found guilty of this offense. The government does not address the Defendants' arguments on this issue.

Evidence of the 2005 suspension of Ms. Prejean's nursing license would clearly be prejudicial and is outside the time frame of the alleged conspiracy in this case. Therefore, it shall be excluded.

Accordingly, IT IS ORDERED that Defendants' Joint Motion to Exclude Evidence of Prior Arrest and of Nursing License Suspension is GRANTED IN PART AND DENIED IN PART. Evidence that Ms. Prejean was arrested in 2000 shall be excluded at trial; however, the

facts leading up to the arrest, including the traffic stop, are relevant and admissible.  The 2004 Consent Judgment shall be admitted, but references to the 2000 arrest shall be redacted.  The 2005 revocation of Ms. Prejean's nursing license is excluded.

**2.      Defendants' Joint Motion to Require Production of Witnesses (Docs. 193 and 248)**

In this motion, Defendants ask the Court to require that the government produce and offer testimony from any patient who has a patient file that is used as evidence at trial.  Defendants argue that the government plans to use expert testimony using sampling of patient files and/or summaries or statistics regarding the patient files.  Defendants argue that such use of the patient files is impermissible under Rules 403 and 1006 of the Federal Rules of Evidence as well as the Confrontation Clause of the United States Constitution.  The government makes three counter-arguments:  1) that it can establish guilt beyond a reasonable doubt without using the files; 2) that the Federal Rules of Evidence do not bar the use of summary evidence; and 3) that the patient files are non-testimonial hearsay and therefore do not implicate the Confrontation Clause.

The central issue in this motion is the Defendants' Confrontation Clause argument.  Under the Confrontation Clause of the Sixth Amendment, a defendant has a right to cross-examine witnesses that provide testimony against him or her.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  The Confrontation Clause, then, prevents admission of testimonial statements of witnesses who are absent from trial unless the defendant has had prior opportunity to cross-examine the declarant.  *Id.*  However, the Supreme Court has held that this rule does not necessarily apply to non-testimonial statements.  *Id.* at 61; *United States v. Holmes*, 406 F.3d 337, 347-48 (5th Cir. 2005).  The Fifth Circuit has held that non-testimonial statements are

admissible if the statement either 1) falls within a firmly rooted hearsay exception, or 2) bears particularized guarantees of trustworthiness.  *Holmes*, 406 F.3d at 347-48 and 348 n.14 (citing *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)).

In *Crawford*, the Supreme Court commented on what would be considered "testimony" for purposes of the Confrontation Clause.  541 U.S. at 51.  The Court held that the Confrontation Clause applies to "'witnesses' against the accused – in other words, those who 'bear testimony.'" *Id.*  Statements that would undoubtedly qualify as testimonial include "in-court testimony or its functional equivalent – that is, materials such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[.]"  *Id.* at 51-52.  In other words, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" would be testimonial statements.  *Id.* at 52.  However, the Court declined to establish a clear definition for a "testimonial statement": "the boundaries of testimonial evidence remain unsettled[,]" as the Fifth Circuit has stated.  *Holmes*, 406 F.3d at 348.

While the Fifth Circuit has not spoken directly on whether medical records or patient files would be considered testimonial statements, there is a recent case from the Sixth Circuit that appears to be on point.  *United States v. Jamieson*, 427 F.3d 394 (6th Cir. 2005).  In *Jamieson*, a case involving money laundering arising out of a fraudulent insurance scheme, the government at trial sought to introduce summaries of a defendant's business records, which included the medical records of some of his clients.  *Id.* at 410-11.  The Sixth Circuit analyzed the issue under Rule 807's residual hearsay exception, Rule 1006 on summary evidence, and the

Supreme Court's ruling in *Crawford* regarding the Confrontation Clause.  *Id.*  The Sixth Circuit found that the business records and medical records did "not resemble the 'formal statement' or 'solemn declaration' identified as testimony by the Supreme Court" in *Crawford*;  as such, the records and summaries were admissible as trustworthy under Rules 807 and 1006 of the Federal Rules of Evidence.  *Id.* at 411-12.

It should be noted that medical records are covered by a specific hearsay exception under Rule 803(4) of the Federal Rules of Evidence: "statements made for purposes of medical diagnosis or treatment[,]" under the conditions listed in that rule, are admissible even if the declarant is unavailable.  The Supreme Court considers this exception to be a "firmly rooted" hearsay exception for purposes of the Confrontation Clause; statements made for medical diagnosis are considered particularly reliable.  *White v. Illinois*, 502 U.S. 346, 356 n.8 (1992). Moreover, business records are covered by a hearsay exception under Rule 803(6) of the Federal Rules of Evidence, for records of regularly conducted activity.  The Fifth Circuit has held that the business records exception is a "firmly rooted" hearsay exception.  *United States v. Ismoila*, 100 F.3d 380, 392 (5th Cir. 1996).

The Court declines to rule categorically or generically at this stage regarding whether the government will be required to produce patients for cross-examination whenever patient files are used at trial.  It is unclear at this point what use the parties intend to make of the patient files.  If the files are used mainly to present basic factual information about the operation of the clinics – how many patients were seen by each doctor, how long the doctor visits took, whether the clinics had certain screening procedures in place – that evidence is probably non-testimonial and therefore would be admissible under the "firmly rooted" medical records and business records

exceptions to the hearsay rule.  However, if the patient files are intended to describe what type of medical condition a patient had and whether a prescription was medically necessary, that use of the patient file would probably be testimonial, such that Defendants should have the right to cross-examine the patient at trial.

Defendants raise one additional argument in support of their motion:  they argue that the government cannot establish guilt beyond a reasonable doubt without the use of the patient files, and, as such, the use of summaries is insufficient evidence to convict the Defendants. Defendants argue that the Court should be persuaded by *United States v. Cuong*, 18 F.3d 1132, 1144 (4th Cir. 1994), in which the Fourth Circuit reversed the conviction of a doctor for prescribing medication outside the scope of legitimate medical practice.  In doing so, the Fourth Circuit found that the conviction on certain counts was based entirely upon the expert testimony of another physician who reviewed patient files and provided summaries to the jury.  *Id.* at 1141. Because such evidence was hearsay, the Court found that it was insufficient to support the defendant's conviction on those counts.  *Id.* at 1141-44.

However, the Fourth Circuit explained its holding in *Cuong* in a later case, *United States v. Singh*, 54 F.3d 1182 (4th Cir. 1995).  In *Singh*, the Fourth Circuit stated:

> Dr. Singh also argues that under our decision in *Tran Trong Cuong* a doctor cannot be convicted under § 841(a) unless the person to whom he prescribed the controlled substance testifies at trial .... This argument, however, misreads *Tran Trong Cuong*.  In *Tran Trong Cuong*, we reversed the convictions, not because the victims did not testify, but rather because their lack of testimony was not replaced by any substantive evidence.

*Id.* at 1188.  Therefore, *Singh* states that there is no bright-line rule that each patient must testify at trial to obtain a conviction for prescribing medication outside the scope of legitimate medical

practice.  The government alleges that it has other evidence supporting the Defendants' guilt, and the Court should allow the government to present such evidence.  However, if it appears that the government cannot establish guilt beyond a reasonable doubt without relying on hearsay evidence, there could be a problem with sufficiency of evidence, much like in *Cuong*.

Accordingly, the Court RESERVES RULING on Defendants' Joint Motion to Require Production of Witnesses until trial.

### 3. Defendants' Joint Motion to Limit the Government's Trial Evidence Based On the Destruction of Records by Hurricane Katrina (Doc. 256)

On January 19, 2006, the Court held an evidentiary hearing regarding the destruction of records at the DEA building during and after Hurricane Katrina.  At that time, the Defendants argued that there was a possibility that the government had acted in bad faith in storing the records and disposing of damaged records, which could be a violation of the Defendants' due process rights.  In the present motion, Defendants reiterate this argument.  They also argue that, even if the government did not act in bad faith, the court may still suppress the evidence as a sanction for the government's negligent conduct or because of undue prejudice to the accused.

The government argues that it did not act in bad faith in this case, and therefore no suppression of evidence is appropriate.  Additionally, the government points to counsel's substantial cooperation in sharing and copying patient files as evidence that there is no bad faith. The government further argues that the Defendants are not materially prejudiced by the loss of the records:  the government argues that the Defendants will still be criminally liable even if found guilty of the crime charged at any one clinic.  Because there is at least one clinic with complete records, the government argues that the Defendants' motion should be denied.

### a.      Due Process Violations

The Fourteenth Amendment requires the prosecution to disclose to a defendant upon request any favorable evidence that is material either to guilt or to punishment.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  However, the government's duty to preserve and to disclose evidence is not absolute.  The government's duty only extends to evidence 1) that might be expected to play a significant role in the defense, 2) that possesses an exculpatory value that was apparent before its destruction, and 3) that is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.  *California v. Trombetta*, 467 U.S. 479, 488-89 (1984).

When the evidence at issue is not clearly exculpatory, the Supreme Court has stated the following standard: "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute denial of due process of law."  *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).  *Accord Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (per curiam) (stating that, in order to show a violation of due process, the defendant must demonstrate the government's bad faith if the evidence destroyed is only "potentially useful" to his defense and that the existence of a pending discovery request does not eliminate the "potentially useful" requirement).

Considering the evidence adduced at the January 2006 hearing, it does not appear that the government acted in bad faith in storing or destroying any records.  Defendants concede as much in their motion.  Therefore, there is not a due process violation under the *Youngblood* standard.

### b.      Suppression of Evidence for Negligent Conduct

Defendants further argue that the Court should suppress the patient files as a sanction for

the government's allegedly negligent conduct in storing and destroying the files.  In support of

their argument, Defendants cite to the Ninth Circuit's standard stated in *United States v. Loud

Hawk*, 628 F.2d 1139, 1146 (9th Cir. 1979) (en banc).  This standard permits the suppression of

"secondary" evidence such as photographs or testimony of witnesses about the destroyed

evidence if the defendant can show 1) bad faith or connivance on behalf of the government, and

2) that he was prejudiced by the loss or destruction of the evidence.[3]  *Id.* Courts in the Ninth

Circuit use a range of factors to determine the government's bad faith or negligence and the

prejudice to the defendant.  *See United States v. Westerdahl*, 727 F.Supp. 1364, 1366-67 (D. Or.

1989) (citing the *Loud Hawk* rule and its factors).

      However, there are no cases employing the *Loud Hawk* rule in the Fifth Circuit.  Instead,

the Fifth Circuit permits a jury to draw an adverse inference from the destruction of records

when a party destroys records in bad faith.  *See, e.g., United States v. Wise*, 221 F.3d 140, 156

(5th Cir. 2000) (citing spoilation cases).  Additionally, the district court may exclude this

evidence under the analysis of Rule 403 of the Federal Rules of Evidence, in that the potential

prejudice may outweigh the probative value of the patient files.  *Caparotta v. Entergy Corp.*, 168

F.3d 754, 756 (5th Cir. 1999).  In *Caparotta*, the Fifth Circuit found that evidence of the

destruction of documents should have been excluded as prejudicial when the party destroying the

documents had not acted in bad faith, and when the information was presented to the jury via the

---

     [3] This standard was established prior to the Supreme Court's ruling in *Arizona v.
Youngblood* that established that bad faith is required to show a due process violation.  Thus,
courts in the Ninth Circuit agree that the *Loud Hawk* rule is not of constitutional dimension. *See,
e.g., United States v. Westerdahl*, 727 F.Supp. 1364, 1366 (D. Or. 1989) (stating that suppression
or sanctions are available "[e]ven if the government's loss or destruction of evidence falls short
of violating a defendant's constitutional rights").

testimony of one of the trial counsel in the case.  *Id.* at 758.

The issue of lost records can be dealt with via a jury charge or a limiting instruction at trial, rather than a categorical pretrial ruling that such evidence should be limited or inadmissible.  The Court is mindful of the problems associated with presentation of spoilation evidence to the jury, as in *Caparotta*.  However, this case is unlike *Caparotta* because the government, the party destroying the documents, bears the burden of proof, and because trial counsel shall not act as witnesses regarding the destruction of documents.  Defendants should have the opportunity at trial to present evidence that the records at issue were damaged and destroyed by Hurricane Katrina, and can make challenges to the incompleteness of the government's evidence in this regard.  Accordingly, the Defendants' Joint Motion for an Order Limiting the Government's Trial Evidence Based On the Destruction of Records by Hurricane Katrina is DENIED, with the reservation of Defendants' rights to challenge the incompleteness of the files as the issue arises at trial.

## B.  Motions Regarding the Superseding Indictment

### 4.    Defendants' Joint Motion to Strike Surplusage from the Superseding Indictment (Doc. 247)

In this motion, Defendants seek to strike certain language from the Superseding Indictment that they believe is prejudicial and unnecessary to charge the alleged offenses.  The Defendants' motion states the language that they ask the Court to strike.  This language includes argumentative or descriptive language that characterizes the Defendants' actions, scientific language describing the effects of the drugs at issue, and references to Ms. Prejean's 2004 Consent Judgment, which, in another motion, Defendants argue should be excluded at trial.

The government opposes any editing of the Superseding Indictment and argues that all language contained in the indictment is necessary to charge the offenses and to explain the circumstances surrounding the crimes.  The government further argues that the language at issue is not inflammatory, irrelevant, or prejudicial, and that there is no basis for the exclusion of the language.

Generally, allegations in an indictment that are unnecessary to prove the crime charged are surplusage.  *United States v. Miller*, 471 U.S. 130, 136-37 (1985).  A district court retains discretion to strike surplusage from an indictment upon motion of the defendant under Rule 7(d) of the Federal Rules of Criminal Procedure.  However, the striking of surplusage is not required: "surplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled."  *United States v. Trice*, 823 F.2d 80, 89 n.8 (5th Cir. 1987) (citations omitted).  The level of proof required to strike surplusage from an indictment is "exacting."  *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

A district court may strike language as surplusage on the ground that such material is unduly prejudicial if the language "serve[s] only to inflame the jury, confuse[s] the issues, and blur[s] the elements necessary for conviction[.]"  *Id.*  Moreover, a court may strike as surplusage any "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language[.]"  *United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953).

After reviewing the Superseding Indictment, the Court believes that none of its language qualifies as inflammatory, confusing, or prejudicial.  As stated earlier, the 2004 Consent Judgment is admissible; therefore, references to it in the indictment are proper as well.  The government's descriptions of the "street" uses of the prescription medications at issue are not

unnecessary or inflammatory: the descriptions merely explain how these drugs are commonly abused.  The Court finds that none of this language would qualify as surplusage.  However, even if certain language is considered surplusage, it can be disregarded because it is not inflammatory, confusing, or prejudicial.

This finding is reinforced by the Court's ruling that the Superseding Indictment will not be read to the jury during the trial.  During oral argument, the Court informed counsel that they jointly will have to create a summary of the Superseding Indictment to use at trial due to the length and detail of the indictment.  The Court believes that the use of a summary will limit any potential prejudice to the Defendants from the language contained in the Superseding Indictment.

Defendants make an additional argument that their alleged failures to act must be stricken as unnecessary and incorrect from the indictment, specifically at Paragraphs 20(c), (m), (n), (p), (q) and (r).  Defendants argue that failures to act cannot constitute a conspiracy:  there cannot be a conspiracy by omissions because overt acts are required.

The government responds that these paragraphs describe violations of state medical standards, and, although they are omissions, the omissions are relevant to demonstrate criminal liability under 21 U.S.C. § 841.  The government argues that this information would have been included in a bill of particulars if it had not been included in the indictment.

Again, the Court believes that the use of a summary of the Superseding Indictment at trial will eliminate any potential prejudice to the Defendants from this language.  Also, the Court believes that the alleged failures to act are relevant to prove criminal liability under 21 U.S.C. § 841.  Accordingly, and for all these reasons, the Defendants' motion is DENIED.

5.      **Defendants' Joint Motion to Dismiss Count One as Duplicitous, or**
        **Alternatively, to Strike Portions of Count One Based On the Statute of**
        **Limitations (Doc. 249)**

Defendants argue in this motion that Count One of the Superseding Indictment should be dismissed because it charges the Defendants with two separate conspiracies in a single count. Alternatively, Defendants argue that the first conspiracy should be stricken from the indictment because it is barred by the statute of limitations.  Defendants argue that the first conspiracy is alleged to have transpired between January 1998 and September 2000, and that no actors other than Ms. Prejean carry over into the second conspiracy, which takes place between December 2004 to April 2005.  Defendants allege that no conspiracy existed between 2000 and 2004 because there is no physician or DEA registrant identified as part of the conspiracy during that period.  Defendants argue that, because Ms. Prejean and the corporate Defendants were not physicians and were not registered to dispense controlled substances with the DEA, they could not themselves have violated 21 U.S.C. § 841 without the assistance of a physician or DEA registrant.

The government argues that only one conspiracy existed during the relevant period from 1998 to 2005.  The government further argues that Ms. Prejean served as the "hub" in the conspiracy, and the physicians and other actors served as the "spokes."  While the physicians changed over the course of the conspiracy, the government argues that the criminal plan did not. So long as any physician was employed by Ms. Prejean, the government argues that the conspiracy existed.  Therefore, the government argues that the indictment is not duplicitous.

"An indictment may be duplicitous if it joins in a single count two or more distinct

offenses." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991). If an indictment is duplicitous and the defendant is prejudiced as a result, a conviction obtained on the indictment may be subject to reversal. *United States v. Sharpe*, 193 F.3d 852, 870 (5th Cir. 1999). However, the Fifth Circuit distinguishes between "acts" and "offenses." The government may include more than one "act" within a single count when those acts represent a single, continuing scheme and when 1) the indictment adequately notifies the defendant of the charges pending; 2) does not subject the defendant to double jeopardy; 3) does not permit prejudicial evidentiary rulings at trial; and 4) does not allow the defendants to be convicted by a single, non-unanimous verdict. *Id.* (citing *United States v. Fisher*, 106 F.3d 622, 632 (5th Cir. 1997)).

In distinguishing between a single conspiracy and multiple conspiracies, the Fifth Circuit examines the following elements: 1) the time period involved; 2) the persons acting as co-conspirators; 3) the statutory offenses charged in the indictment; 4) the nature and scope of the criminal activity; and 5) the places where the events alleged as the conspiracy took place. *United States v. Lokey*, 945 F.2d 825, 833 (5th Cir. 1991) (citations omitted). Moreover, it is not required that each co-conspirator know the other co-conspirators: there is a conspiracy if there is a "sufficient overlap of personnel" surrounding a "pivotal figure" who "directs and organizes the illegal activity, and has extensive dealings with each of the parties." *Id.*

Based on the allegations in the indictment, the Court finds that this case involves a single conspiracy. Regarding the factors stated in *Lokey*, the Defendants operated under essentially the same corporate names throughout the relevant period and in the same buildings and clinics, although the Court understands that there was some expansion of the Defendants' businesses during the relevant time period. Although the physicians changed, the clinics themselves did

not:  the clinics allegedly gave the conspiracy its air of legitimacy and provided continuity throughout the conspiracy period.  Defendants are charged with conspiring to prescribe medications outside the scope of professional practice.  It is important that major components of this professional practice remained the same between 1998 and 2005, the time of alleged conspiracy.

Under the government's hub-and-spoke theory, Ms. Prejean acted as the hub or "pivotal figure" around which the conspiracy revolved.  The corporate Defendants also were involved throughout the conspiracy, lending a "sufficient overlap in personnel."  While there is a gap in time in the factual allegations supporting the charges, there is no requirement that there be *any* factual allegations supporting an indictment, other than a general allegation that the defendant committed the crime charged.  *See United States v. Williams,* 679 F.2d 504, 508 (5th Cir. 1982) (the indictment is not required to "set forth facts and evidentiary details necessary to establish each of the elements of the charged offense"); *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978) ("[i]t is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges").  The detailed factual allegations in the Superseding Indictment are merely background information and do not support a finding that Count One is duplicitous.

Also, Defendants argue that the "hub" of this conspiracy must be a physician or a DEA registrant.  A non-physician must conspire with someone authorized to write prescriptions in order to violate 21 U.S.C. § 841.  *United States v. Albert*, 675 F.2d 712, 715-16 (5th Cir. 1982).  Although no single doctor is alleged to have conspired throughout the period, Ms. Prejean employed at least one doctor able to prescribe medications throughout the period.  Therefore,

Defendants' argument that Ms. Prejean, a non-physician, could not violate the controlled substances laws fails.  As long as Ms. Prejean conspired with any physician throughout the conspiracy period to violate the drug laws, she was in violation of 21 U.S.C. § 841. Accordingly, Defendant's motion is DENIED.

### C.  Motions Regarding Legal Standards / Motion to Dismiss

### 6.     Defendants' Joint Motion for a Pretrial Determination of the Standard for Criminal Liability Under 21 U.S.C. § 841 (Docs. 192 & 250)

In this motion, Defendants seek a determination from this Court of the meaning of the terms "usual course of his professional practice" and "legitimate medical purpose" as standards of criminal liability under Title 21, United States Code, Section 841, the statute under which the Defendants were indicted.  21 C.F.R. § 1306.04.  Specifically, Defendants ask the Court to find that state medical regulations are not relevant toward a determination of what constitutes "professional practice" or a "legitimate medical purpose," and Defendants ask the Court to apply a nationwide standard for these terms.  Defendants argue that the Supreme Court in *Gonzales v. Oregon*, 126 S.Ct. 904 (2006) made a significant distinction between the states' regulation of medical practice and the federal government's prosecutions under the Controlled Substances Act ("CSA").  Defendants argue that state standards of professional medical practice are therefore irrelevant for determination of whether a defendant has violated the Controlled Substances Act. In addition, Defendants argue that there is a potential for jury confusion from the state standards, in that the jury may believe that a violation of those standards is equivalent to a violation of 21 U.S.C. § 841.

The government disagrees and argues that *Gonzales v. Oregon* does not disturb the body

of case law that holds that violations of state regulations of medical practice may be evidence supporting a conviction under 21 U.S.C. § 841.  The government particularly cites to *United States v. Moore*, in which the U.S. Supreme Court found that "registered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice."  423 U.S. 122, 124 (1975).  The government argues that, after *Moore*, the circuits generally agreed that violations of state standards of medical conduct are relevant and admissible to demonstrate a physician's criminal liability under 21 U.S.C. § 841.  *See United States v. Alerre*, 430 F.3d 681, 691 (4th Cir. 2005) ("evidence that a physician's performance has consistently departed from accepted professional standards .... may properly be relevant to establish that the physician contravened the criminal standard of liability").

There is almost no post-*Gonzales* case law on this issue.[4]  From the opinion itself, the Court agrees with government's reading of *Gonzales v. Oregon*.  Some background is necessary to explain this finding.  Title 21 of the United States Code sets forth three categories of prohibited acts under the Controlled Substances Act.  21 U.S.C. §§ 841-43.  Section 841 is a blanket prohibition against any manufacture, distribution, or dispensation of controlled substances, with the exception of authorized uses under the Controlled Substances Act.  Sections 842 and 843 prohibit various types of unauthorized distribution or dispensation of controlled substances by DEA "registrants" like pharmacists or doctors.  Prohibited acts under these

---

[4]  The only case found in the Court's research was *United States v. Edwin*, No. 05-490, 2006 WL 763653 (N.D. Ill. Mar. 22, 2006).  In that case, the district court denied the defendant's motion to dismiss the indictment;  the defendant argued that *Gonzales* effectively struck down the "legitimate medical purpose" requirement of 21 C.F.R. § 1306.04, the regulation interpreting 21 U.S.C. § 841.  *Id.* at *5.  The district court found that *Gonzales* did not affect the validity of the Controlled Substances Act or of 21 C.F.R. § 1306.04.  *Id.*

sections include the distribution of drugs to those who are not authorized to have them, alteration

of the labels on controlled substances, failure to maintain proper records regarding controlled

substances, and use of false DEA registration numbers.  The acts listed in Sections 842 and 843

are considered "more or less technical violations" of the Controlled Substances Act, and the

penalties under these sections are less severe than under Section 841.  *United States v. Vamos*,

797 F.2d 1146, 1152 n.1 (2d Cir. 1986) (citing H.R.Rep. No. 91-1444, 1970 U.S.C.C.A.N. 4566,

4576).

When the Controlled Substances Act first went into effect, there was a question as to

whether DEA registrants, that is, physicians, pharmacists, and certain researchers, among others,

could be prosecuted under Sections 841's blanket prohibition, or whether they must be

prosecuted under Sections 842 and 843, which provide lesser penalties.  The Supreme Court

answered this question in *United States v. Moore*, 423 U.S. 122, 124 (1975), and held that

Section 841 applied by its terms to "any person."  There is no exemption under Section 841 of

doctors and pharmacists for their activities which are not authorized by the Controlled

Substances Act.  *Id.* at 131-32.  The Court clarified that a DEA registrant can only be prosecuted

under Section 841 when his or her activities fall outside the usual course of practice because the

DEA only licenses individuals to distribute prescriptions in their role as physicians or

practitioners.  *Id.* at 141-43.

After *Moore*, the lower courts had to determine what activities would be considered

outside the scope of professional practice to the degree that would subject a DEA registrant to

criminal liability under 21 U.S.C. § 841.  Complicating this issue is the fact that, while the

federal government regulates and prosecutes the distribution of controlled substances, the

practice of medicine is almost entirely regulated by the states.  Moreover, there are variations in state regulation of medical practice.  The question remained of what proof would be necessary or relevant to determine whether a DEA registrant could be held criminally liable under the statute.

Over the years, the lower courts held that violations of generally accepted practices, often in the form of state medical regulations, were relevant as proof of criminal liability under 21 U.S.C. § 841.  *See, e.g., Vamos*, 797 F.2d at 1151 (finding relevant to liability the "prevailing standards of treatment" and "generally accepted" medical practices);  *United States v. Varma*, 691 F.2d 460, 464 (10th Cir. 1982) (citing to evidence that a physician failed to conduct proper patient screenings and physical examinations);  *United States v. Rosen*, 582 F.2d 1032, 1035-36 (5th Cir. 1978) (noting a lack of "clearcut criteria" for determining a violation of 21 U.S.C. § 841 for physicians, but observing that certain examples of violations of medical standards were recurrent in many cases);  *United States v. Boettjer*, 569 F.2d 1078, 1081 (9th Cir. 1978) ("the 'usual course' standard itself imports considerations of medical legitimacy and accepted medical standards"); *United States v. Rosenberg*, 515 F.2d 190, 199-200 (9th Cir. 1975) (detailing evidence that the defendant had failed to follow state regulations on medical record-keeping and failed to provide physical examinations, which were "proper professional practice").

Defendants argue that *Gonzales v. Oregon* upsets the body of case law in the lower courts because the Supreme Court has made new statements regarding the relationship between state regulation of medical practice and federal regulation of controlled substances.  Defendants argue that a national standard of liability should apply now under 21 U.S.C. § 841 because the Supreme Court has indicated that the regulation of medicine belongs to the states.

However, *Gonzales v. Oregon* did not speak directly to the issue that Defendants raise,

whether violations of state regulations are relevant for establishing criminal liability under 21

U.S.C. § 841.  Because *Gonzales* does not address this specific issue, and, for the following

reasons, this Court believes that *Gonzales* does not disturb prior case law.  At the outset, it

should be noted that the Supreme Court cites *Moore* with approval in *Gonzales*.  *See* 126 S.Ct. at

925.  The Supreme Court does not display the intention to upset its holding in *Moore* or to

question the case law in the lower courts that followed from *Moore*.

Additionally, the majority opinion in *Gonzales* strongly supports the proposition that

states primarily are responsible for defining what "legitimate medical practice" is.  In particular,

the following passage of the opinion supports the government's argument that no nationwide

standard should apply in this case:

> Even though regulation of health and safety is primarily, and
> historically, a matter of local concern, there is no question that the
> Federal Government can set uniform national standards in these
> areas.  In connection to the CSA, however, we find only one area
> in which Congress set general, uniform standards of medical
> practice.  [That area is the uniform national standard for the
> medical treatment of narcotic addiction under 42 U.S.C. § 290bb-
> 2a.]  This provision strengthens the understanding of the CSA as a
> statute combating recreational drug abuse, and also indicates that
> when Congress wants to regulate medical practice in the given
> scheme, it does so by explicit language in the statute.

126 S.Ct. at 923-24 (internal citations and quotations omitted).

The above passage from *Gonzales v. Oregon* indicates that there is no uniform national

standard for "professional practice" or "legitimate medical purpose" and that Congress did not

intend to create one.  Thus, under case law prior to *Gonzales*, in order to prove guilt under the

statute, the government is allowed to produce evidence that the defendant violated state

regulations on medical practice.  While violation of a state statute regulating medical practice

would not be evidence of guilt *per se* under the CSA, these violations remain persuasive and relevant, particularly if the government can show a pattern of consistent violations.[5]  *Alerre*, 430 F.3d at 691.   The Court finds that *Gonzales v. Oregon* does not disturb the prior body of case law that allows violations of state regulations of medical practice as relevant evidence of guilt under 21 U.S.C. § 841.   The Court declines to establish a nationwide standard of liability for this statute and DENIES the Defendants' motion.

### 7.        Defendants' Joint Motion for Relief Based On *Gonzales v. Oregon* (Doc. 251)

In this motion, Defendants seek an evidentiary hearing and request that the Court order that the government produce evidence that shows Defendants had actual knowledge that the Defendants were distributing drugs to individuals who were recreationally abusing those drugs or who were trafficking them.   Defendants argue that *Gonzales v. Oregon*, changes the circumstances in which a Controlled Substances Act ("CSA") violation can occur and that the government should be required in this case to demonstrate in an evidentiary hearing, that it has

---

[5]  Consistent, knowing violations of state medical standards are key in demonstrating a violation of 21 U.S.C. § 841.  *See Alerre*, 430 F.3d at 691.  Defendants argue that a national standard should be required because state standards vary widely.  For example, one state may require drug screening of patients, while another state does not.  Defendants argue that an individual may be prosecuted federally under 21 U.S.C. § 841 for a failure to perform drug screening – an activity that would not be criminal or illegal in a state that does not require it.

However, Defendants miss the essential element of the *Moore* standard: the distributor of drugs must knowingly prescribe outside the scope of professional practice.  The criminal standard of liability requires that the defendant "consistently failed to follow generally recognized procedures" in prescribing drugs.  *Alerre*, 430 F.3d at 691.  This requires more than a single violation of a state's medical regulation that may not be generally recognized.  Additionally, as a criminal statute, 21 U.S.C. § 841 requires proof beyond a reasonable doubt, which differs from a civil medical malpractice standard.  *United States v. Cuong*, 18 F.3d 1132, 1137 (4th Cir. 1994).  Obviously, the failure to perform drug screening, if that practice is not accepted in most states, would be insufficient on its own to show criminal liability under 21 U.S.C. § 841.  However, without adequate information, the Court declines to state what would be sufficient evidence of criminal liability under the statute in this case.

evidence that would meet this new standard.

The government responds arguing that *Gonzales* did not change the law respecting the CSA and that therefore Defendants are entitled to no hearing and no relief on this point.

It is unclear from Defendants' motion what grounds a hearing could possibly be justified in these circumstances, assuming *Gonzales* changed the relevant law.  Presumably, Defendants are invoking Federal Rule of Criminal Procedure 12(b)(3)(B) challenging the sufficiency of the indictment and information under *Gonzales*'s alleged new standard.

There does not appear to be any requirement–by rule or otherwise–that a district court hold a hearing regarding the disposition of a 12(b)(3)(B) motion.  *See* Fed. R. Crim. P. 12(b)(3)(B); *see also United States v. Poe*, 462 F.2d 195, 197-98 (5th Cir. 1972) (concluding in a prosecution involving an in-court identification that whether to hold an evidentiary suppression hearing is a matter of the court's discretion and need not be held if the facts as alleged, if proven, would not justify the relief sought).

Moreover, if the true reason for the hearing is to conduct discovery, the Court can deny the request.  *See United States v. Harrelson*, 705 F.2d 733, 738 (5th Cir. 1983) ("Hearings on motions to suppress are not discovery proceedings, but are instead designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought").

The above cases indicate that Defendants' motion can be disposed without hearing.  The next question is whether *Gonzales* modifies the case law respecting the CSA such that the government's indictment no longer states an offense. The Court finds that the indictment properly states an offense against the Defendants.

A close reading of *Gonzales* reveals no explicit changes to the CSA's section 841

standard.  Instead, as previously discussed, the Supreme Court reaffirms the predecessor to
*Gonzales*, *United States v. Moore*, 423 U.S. 122 (1975), which discusses the scope of CSA
violations and the corresponding situations in which it will be violated.  In reaffirming *Moore*,
the Court in *Gonzales* states that two situations justify prosecution and conviction under the CSA
and that otherwise the CSA does not regulate the practice of medicine.  *Gonzales*, 126 S.Ct. at
923.  Those situations occur when doctors use their "prescription-writing powers" to engage in
drug dealing for recreational abuse or drug trafficking, as "conventionally understood."  *Id.*

Defendants argue that *Gonzales* as well as other cases introduce an "actual knowledge"
scienter into the CSA calculus.  However, the Supreme Court uses an important modifier when
noting the activities regulated by the CSA: "conventionally understood."  *Id.*  The use of
"conventionally understood" indicates the Supreme Court's affirmation of the standard of
criminality under the CSA in case law prior to *Gonzales*.  Therefore, the standard of criminality
did not change with *Gonzales,* and Defendants are not entitled to any relief because of it.

Even if a knowledge scienter is employed, as Defendants request, the indictment meets
this standard.[6]  In determining whether an indictment survives a motion under Federal Rule of
Criminal Procedure 12, a district court must take the allegations in the indictment as true.  *United
States v. South Fla. Asphalt Co.*, 329 F.2d 860, 865 (5th Cir. 1964).  The government has alleged

---

[6] Defendants also provide as Exhibit A to their motion a list of other cases that have been
prosecuted under 21 U.S.C. § 841.  Defendants argue that the instant case does not present the
same type of egregious behavior found in those cases, and that factually the indictment does not
state an offense by the Defendants.  The Court is unwilling and unable to usurp the role of the
jury on this issue, and cannot dismiss an indictment because the Defendants alleged conduct is
not as severe as that displayed in other cases.  Because the Court finds the Superseding
Indictment states an offense against Defendants, the Court must reject Defendants' argument on
this point.

a conspiracy to sell drugs illicitly.  Moreover, at a prior evidentiary hearing in this matter,

witnesses testified as to their frequency of visitations to the Defendants' clinics and the

frequency with which controlled substances were prescribed to them.  From this testimony,

knowledge can be inferred.  Therefore, assuming arguendo, that a knowledge scienter applies to

CSA cases, the government's indictment is not deficient and therefore should not be dismissed.

Accordingly, Defendant's motion is DENIED.

### 8.      Defendants' Joint Motion to Dismiss Based On the Inapplicability and/or Vagueness of 21 U.S.C. § 841 (Doc. 246)

In this motion, Defendants ask the Court to dismiss the entire Superseding Indictment

because it fails to state a violation of 21 U.S.C. § 841.[7]  Defendants initially argue that the statute

cannot be applied to them because they are not registered with the DEA to dispense controlled

substances.  Alternatively, Defendants argue that, even if the statute can be applied to them, the

Court should find the statute void for vagueness and dismiss the case on that ground.

The government opposes this motion and argues that the case law is clear that a non-

registrant can be prosecuted under 21 U.S.C. § 841.  Moreover, the government argues that the

statute is not void for vagueness, and that other courts have found this challenge meritless in the

past.

Title 21, United States Code, Section 841(a)(1) provides that: "Except as authorized by

this subchapter, it shall be unlawful for any person knowingly and intentionally (1) to

---

[7]  The indictment also contains allegations that Defendants violated money laundering statutes, 21 U.S.C. § 853 and 18 U.S.C. § 1956, as well as conspiracy to dispense controlled substances, 21 U.S.C. § 846.  Defendants argue that the entire indictment should be dismissed because all of these charges stem from the allegation that Defendants have violated 21 U.S.C. § 841.

manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"  A physician or other DEA registrant can be found criminally liable under this provision when his or her "conduct exceed[s] the bounds of 'professional practice.'"  *United States v. Moore*, 423 U.S. 122, 142 (1975).

First, Defendants argue that because they are not physicians or DEA registrants 21 U.S.C. § 841(a)(1) cannot apply to their businesses.  However, the body of case law states that 21 U.S.C. § 841(a)(1) by its terms applies to "any person," not just physicians and DEA registrants.  *United States v. Johnson,* 831 F.2d 124, 127 (6th Cir. 1987) ("the basic proscription in section 841 applies to 'any person'"); *United States v. Vamos*, 797 F.2d 1146, 1153-54 (2d Cir. 1986) (applying section 841 for illegitimate medical practice to a layperson who conspired with a physician); *United States v. Albert*, 675 F.2d 712, 715-16 (5th Cir. 1982) (same); *United States v. Hicks*, 529 F.2d 841, 844 (5th Cir. 1976) (same).  Moreover, the case law also supports the view that the provision can be applied to those who conspire with a DEA registrant to prescribe controlled substances without a legitimate medical purpose even though that person, a non-registrant, was "incapable of committing the substantive offense." *Albert*, 675 F.2d at 715 (internal citations omitted).

Defendants make an additional argument that the indictment should be dismissed because 21 C.F.R. § 1306.04, the regulation associated with 21 U.S.C. § 841, states that physicians are subject to criminal liability.  Defendants contend that, because non-registrants are not included in its language, this regulation indicates that non-registrants cannot be found criminally liable under section 841 for prescription outside the scope of professional practice.  Defendants argue that this interpretation should be given substantial deference as an agency's interpretation of its own

enabling statute.  *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (stating the deferential standard).

However, the regulation at issue is silent regarding the criminal liability of non-registrants, and makes no statement that these individuals are exempt from prosecution for a violation of the statute.  Given the silence of the regulation and the body of case law supporting the government's view that non-registrants may be prosecuted, the Court holds that the regulation does not exempt non-registrants from prosecution and that the interpretation given by Defendants is not entitled to *Mead* deference.

Second and alternatively, Defendants argue that the statute should be considered void for vagueness because the medical community has not established clear, nationwide standards for what is considered "legitimate medical purpose" in the field of pain management.  Defendants are correct in this assertion; there is no national standard on what is considered "legitimate medical purpose" or "professional practice" regarding pain management.  *See In re Skinner*, 60 Fed. Reg. 62,887, 62,891 (Dec. 7, 1995) ("the medical community has not reached a consensus as to the appropriate level of prescribing of controlled substances in the treatment of chronic pain patients").  Because of the lack of consensus on what is considered legitimate prescriptions for pain, the Defendants argue that the statute is "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits[.]" *Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402-03 (1966)).  Thus, Defendants argue that the statute violates the Due Process Clause and should be declared void for vagueness.

It does not appear that the statute is void for vagueness.  The Fifth Circuit rejected a similar argument that 21 U.S.C. § 841 was unduly vague in *United States v. Collier*, 478 F.2d

268, 271-72 (5th Cir. 1973).  In that case, a doctor who had pled guilty to illegal distribution of

methadone challenged his prosecution as void for vagueness, and argued that the term "in the

course of professional practice" created no objective standards for liability.  *Id.* at 271.  The Fifth

Circuit rejected this argument, and found that the concept of professional practice necessarily

depended on the facts and circumstances of each case.  *Id.* at 272.  "In making a medical

judgment concerning the right treatment for an individual patient, physicians require a certain

latitude of available options."  *Id.*  The Fifth Circuit found the term "professional practice" was

not unduly vague.  *Id.*  While the term "professional practice" involved a certain amount of

professional judgment and discretion, the statute prosecutes physicians who act as drug pushers

and thus was not standardless.  *Id.* at 271-72.

    While Defendants argue that the statute does not place a physician on notice that his or

her activity may be criminal, case law makes clear that consistent and pervasive violations of

state regulations and DEA regulations on medical practice and dispensing of controlled

substances can be evidence of a defendant's criminal liability under 21 U.S.C. § 841.  *See*

*Alerre*, 430 F.3d at 691 ("evidence that a physician's performance has consistently departed

from accepted professional standards .... may properly be relevant to establish that the physician

contravened the criminal standard of liability").  A physician can hardly claim that he or she was

unaware that his or her actions were potentially criminal under section 841 when he or she has

consistently violated accepted standards of professional practice.

    Additionally, although Defendants argue correctly that there is no national consensus on

the accepted prescription dosages for the treatment of chronic pain patients, this alone does not

make section 841 void for vagueness as applied to these Defendants.  If over-prescription, that is,

the prescription of needlessly high dosages of controlled substances, were the only issue in this case, the Court's analysis might be different.  However, the government has alleged much more than over-prescription in this case:  there are also allegations that the Defendants violated professional standards in the handling of prescription medications, the management of patient records, and the time allotted for patient evaluation by physicians.  All of these actions also could subject the Defendants to criminal liability under section 841.

Because the statute applies to non-registrants like the Defendants, and because the statute is not void for vagueness as applied to Defendants, Defendants' motion is DENIED.

### III.  Conclusion

Accordingly, Defendants' Joint Motion to Exclude Evidence of Prior Arrest and of Nursing License Suspension (Rec. Doc. No. 195) is GRANTED IN PART and DENIED IN PART.  The Court RESERVES RULING until trial upon Defendants' Joint Motion to Require Production of Witnesses (Docs. 193 and 248).  Defendants' Joint Motion for an Order Limiting the Government's Trial Evidence Based On the Destruction of Records by Hurricane Katrina (Doc. 256) is DENIED, with reservation of Defendants' rights to challenge specific uses of the evidence at trial.  Defendants' Joint Motion to Strike Surplusage from the Superseding Indictment (Doc. 247) is DENIED, with the understanding that the parties will develop a summary of the indictment for use at trial.  Defendants' Joint Motion to Dismiss Count One as Duplicitous, or Alternatively, to Strike Portions of Count One Based On the Statute of Limitations (Doc. 249) is DENIED.  Defendants' Joint Motion for a Pretrial Determination of the Standard for Criminal Liability Under 21 U.S.C. § 841 (Docs. 192 and 250) is DENIED.  Defendants' Joint Motion for Relief Based On *Gonzales v. Oregon* (Doc. 251) is DENIED.

Defendants' Joint Motion to Dismiss Based On the Inapplicability and/or Vagueness of 21

U.S.C. § 841 (Docs. 194 and 246) is DENIED.

New Orleans, Louisiana, this  19th  day of April, 2006.

United States District Judge