UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          *     CRIMINAL DOCKET

VERSUS                            *     NO. 05-130

CHERLYN R. ARMSTRONG, ET AL       *     SECTION "L"

## ORDER & REASONS

Before the Court is Defendants Cherlyn Armstrong Scherer Prejean ("Prejean"), the

Scherer Corporate Defendants,[1] and Dr. Suzette Cullin's ("Cullins" and together, the

"Defendants") Joint Motion for Entry of a Judgment of Acquittal and, in the Alternative, for a

New Trial (Rec. Doc. No. 395).   For the following reasons, the motion is DENIED.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The facts and procedural background leading up to trial in this matter have been

sufficiently outlined in prior orders of this Court.  Nevertheless, some recounting of the case's

background is necessary for purposes of this motion.  In summary, this cases results from what

the Government alleges was a conspiracy involving Cherlyn Armstrong Sherer Prejean, a

Registered Nurse and the owner and operator of weight loss and pain management clinics and

pharmacies, to illegally dispense controlled substances to individuals for little or no medical

---

[1]  The Scherer Corporate Defendants are the following entities:  Scherer Physicians Weight Loss Center, Inc.; Scherer's Medical Center, Inc.; Scherer's Slidell Medical Center, L.L.C.; Scherer's Gretna Medical Center, L.L.C.; Mia's Pharmacy, L.L.C.; Mia's Pharmacy Slidell, L.L.C.; Bella Mia Holdings, L.L.C.; C.C. Armstrong Co., L.L.C.; and the Ballard Co., L.L.C.

reason.  From approximately January 1998 to August 2000, the clinics' focus was on controlled substance weight loss drugs, but thereafter the focus changed to controlled substance pain management drugs until the clinics were shut down by DEA Agents in April 2005.   Ms. Prejean, the various corporate entities which she established, including the pharmacies and clinics (the "Corporate Defendants"), and three physicians employed at the clinics were charged with knowingly and intentionally conspiring to dispense Schedule III and IV controlled substances outside the course of professional practice and without a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(b)(1)(D) and 841(b)(2), all in violation of Title 21, United States Code, Section 846.  The superseding indictment also charged twenty six occasions when Prejean, the clinics, and the pharmacies, aided and abetted by persons known and unknown, including medical practitioners, knowingly and intentionally dispensed controlled substances, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a) and Title 18, United States Code, Section 2.  Lastly, Prejean and the Corporate Defendants were charged with conspiring to launder money involving the proceeds of the illegal drug activity, in violation of Title 18, United States Code, Section 1956(h).

Prior to trial, two of the co-defendant physicians named in the superseding indictment, Dr. Joseph Guenther and Dr. Betty DeLoach, pled guilty to various charges.[2]  The trial of the remaining Defendants–Prejean, the Corporate Defendants, and Dr. Cullins–commenced on July

---

[2]  Dr. Guenther pled guilty to Count One, conspiracy to illegally dispense controlled substances, and Counts 13, 16, 21 and 25 for illegal dispensation of controlled substances outside the course of professional practice and not for a legitimate medical purpose.  Dr. DeLoach pled guilty to misprision of a felony, in violation of Title 18, United States Code, Section 4.

10, 2006.  At the conclusion of the nearly three week trial, the jury found these Defendants guilty of conspiracy, as charged in Count One of the superseding indictment, and various substantive counts, as charged in Counts Two through Twenty-Seven of the superseding indictment.  Prejean and the Corporate Defendants were also found guilty of conspiring to launder money, as charged in Count Twenty-Eight.

Following trial, the Defendants filed the present motion, contending that the Court should enter a judgment of acquittal or order a new trial for the Defendants for various reasons, which the Court now addresses.

## II.    JUDGMENT OF ACQUITTAL

The Defendants argue that the Court should enter judgment of acquittal for three primary reasons: (i) insufficiency of evidence; (ii) the Defendants should have been tried on multiple conspiracies, rather than a single conspiracy; and (iii) the indictment impermissibly charged Prejean and her entities as the principals and the physicians as the aiders and abettors.

### A.    Legal Standard for Judgment of Acquittal

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, a court may set aside a verdict and enter a judgment of acquittal on its own motion or upon motion of the defendant if the evidence is insufficient to sustain conviction of an offense.  Fed. R. Crim. P. 29.  The district court must uphold a jury's verdict as long as a rational jury could have found each of the essential elements proven beyond a reasonable doubt.  *United States v. Yi* , 460 F.3d 623, 629 (5th Cir. 2006) (citations omitted); *United States v. Elashi*, 440 F. Supp. 2d 536, 544 (N.D. Tex. 2006) (citing *United States v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994)).  Otherwise, the Government must set aside the verdict or enter a judgment of acquittal.  The court must consider

whether a reasonable jury could find the defendant guilty beyond a reasonable doubt reviewing "the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in support of the jury verdict." *United States v. Gonzales*, 436 F.3d 560, 571 (5th Cir. 2006). "The court does not assess the credibility of witnesses or weigh any conflicting evidence, since the jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Elashi*, 440 F. Supp. 2d at 544. "The intent necessary to support a conviction can be demonstrated by direct or circumstantial evidence that allows an inference of an unlawful intent, and not every hypothesis of innocence need be excluded." *United States v. Aggarwal*, 17 F.3d 737, 740 (5th Cir. 1994) (internal citations omitted). However, if the Court determines after its review that the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," the Court must set aside the jury's verdict. *Pennington*, 20 F.3d at 597.

### B.        Sufficiency of Evidence

The Defendants contend that the district court should grant a judgment of acquittal because evidence was insufficient: (i) to establish a conspiracy between Prejean and Cullins, or any other registrant; (ii) to establish Prejean's guilt, or the guilt of any convicted entity, on various substantive counts where the jury convicted Prejean and the entity, but acquitted Cullins and the pharmacies;[3] and (iii) to establish the prescriptions listed in Counts 2 through 27 were issued outside the scope of professional practice or without a legitimate medical purpose because the Government did not present any expert testimony on the issue.

The Court will address each of these arguments in turn. However, before a review of the

---

[3] Counts 11, 14, 17, 20, 26 and 27.

evidence regarding the conspiracy and the substantive violations, it is important to note the elements that the Government was required to prove at trial for the jury to find the Defendants guilty of these crimes.  To prove conspiracy, the Government was required to establish (i) that two or more persons, including one who is a registrant, directly or indirectly reached an agreement to dispense Schedule III or IV controlled substances not for a legitimate medical purpose or outside the scope of professional practice; (ii) the Defendant knew the unlawful purpose of the agreement; (iii) the Defendant joined in the agreement willfully, with intent to further its unlawful purpose; and (iv) the overall scope of the conspiracy involved Schedule III or IV controlled substances.  To prove an illegal dispensation of a controlled substance, the Government had to prove the following elements beyond a reasonable doubt:  (i) that a physician prescribed or dispensed a controlled substance, specifically in this case a Schedule III or IV controlled substance as alleged in the superseding indictment; (ii) that the physician did so knowingly and intentionally; and (iii) that the physician prescribed or dispensed the controlled substance without a legitimate medical purpose or outside the usual course of professional practice.

### 1.      *Sufficiency of Evidence Regarding the Conspiracy*

The Defendants argue that the Government failed to prove direct or circumstantial evidence of a conspiracy between Prejean and the registrants.

The Court finds that evidence viewed in the light most favorable to the Government supports a finding of guilt on the conspiracy charge.  At trial, the Government argued that Prejean and other indicted and unindicted co-conspirators organized and ran a continuous scheme of delivering controlled substances to a high volume of individuals at the clinics for

profit rather than medical purpose.  The Government presented evidence of preprinted prescription forms with the same type and dosage of medicine; prefabricated doctor's comments and diagnosis; long term rather than short term treatment; an extremely high volume of patients seen each day (up to 300 hundred patients in a four to six hour time frame); short duration of patient visits (on average sixty to ninety seconds); physical therapy sessions lasting two to five minutes and consisting of nothing more than sitting in a vibrating chair; lack of physical examinations;[4] a cash only payment policy; lack of monitoring for addiction; and clinic hopping. All of this evidence suggests that the Defendants attempted to create the appearance of a legitimate medical practice while in reality running an illegitimate business scheme which involved dispensing controlled substances to anyone who could afford to buy them, and the registrants were significantly involved in this scheme.

The Government also provided testimony of several DEA agents who posed undercover as patients and were prescribed pain medications by doctors for illegitimate reasons, such as to increase energy; received pain medications without prescriptions from non-physician clinic workers; and encouraged to clinic hop to receive early refills on medication.[5]  The Government additionally presented testimony of several doctors who worked at the clinics and left after realization that the clinics were not operated for legitimate purposes and one doctor who recognized simply from an interview that clinic practices were illegitimate.[6]  Dr. Guenther

---

[4]  The Fifth Circuit has held "abbreviated examinations to be probative on the question of whether a legitimate medical purpose exists."  *United States v. Chin*, 795 F.2d 496, 500 (citing *United States v. Rosen*, 582 F.2d at 1034, n.7 & 1036).

[5]  Test. of DEA Agents Finis Raymond Price,Warren Gilbert and David Gauthreaux.

[6]  *See, e,g,* test. of Dr. Gilbert R. Mason, Jr. and Dr. Hope Ewing.

testified that he warned Prejean many times about the clinic hoppers, the inadequacy of physical therapy and the need to test patients for addiction.  After he was told numerous times by Prejean that she would take care of the issue, no steps were ever taken.  Furthermore, the Government presented testimony of clinic workers who testified as to clinic practices and the methods staff were taught to disguise the clinic operations as a legitimate medical business, expressing knowledge of the clinic hopping and pressure on clinic staff to see as many people a day as possible.[7]  Two pharmacists also testified about the prescribing practices at the clinics, with one pharmacist even acknowledging the clinic's mission to dispense pain killers to addicts.[8]  Lastly, the Government presented testimony of former patients who were freely permitted to clinic hop and receive medication when MRIs revealed nothing wrong with them[9] and testimony of family members of patients who abused pain medication for illegitimate purposes or became addicted and overdosed.[10]   The family members testified that when they notified clinic staff, including Mr. Prejean, their calls were never returned, and when some family members visited the clinic to request that their relative be refused medication due to addiction, they were ignored and physically removed from the premises.

All of this testimony and physical evidence submitted by the Government at trial firmly supports the determination that a reasonable juror could determine that the Defendants were guilty of conspiracy to illegally dispense controlled substances.

---

[7]  *See, e.g.* test. of Devin Johnson, Felicia Thomas and Belinda Page.

[8]  Test. of Fabian Robinson and Freddie Robinson.

[9]  Test. of Nicole Buckeridge.

[10]  *See, e.g.* test. of Debbie Smith, Christine Ordoyne, and Sherrie Sibley.

### 2. Sufficiency of Evidence for Non-Registrant's Guilt for Substantive Violations

Regarding their second insufficiency of evidence claim, the Defendants argue that the jury could not find non-registrants guilty of certain substantive violations of the Controlled Substances Act without finding the guilt of a registrant. Specifically, the Defendants state that in order to find a non-registrant guilty of illegal dispensation or distribution of controlled substances under Section 841(a), the jury also had to find a physician or a pharmacy knowingly dispensed the drug without a legitimate purpose or outside the course of medical practice.

The Defendants refer to *United States v. Albert,* 675 F.2d 712 (5th Cir. 1982) for support. However, *Albert* held that a non-physician must conspire with someone authorized to write prescriptions in order to violate 21 U.S.C. § 841. *Id.* at 716. The issue in *Albert* was conspiracy, and nothing in that case precludes a finding that a non-registrant may act as a principal or aid and abet a registrant to violate 21 U.S.C. § 841 and 18 U.S.C. § 2. Section 2, which provides for aiding and abetting violations, does not require shared criminal intent, unlike a conspiracy violation. "[I]t states a rule of criminal responsibility for acts which one assists another in performing." *United States v. Walker*, 621 F.2d 163, 167 (5th Cir. 1980) (quoting *Nye and Nissen v. United States*, 336 U.S. 613, 619-20, 69 S.Ct. 766, 93 L.Ed. 919 (1949)). Only the defendant charged under Section 2 must possess criminal intent and the individual whom the defendant caused to perform the act may be completely innocent. *United States v. Levy*, 969 F.2d 136, 141 (5th Cir. 1992); *see also United States v. Bright*, 630 F.2d 804 (5th Cir. 1980) (explaining distinction between conspiracy, which requires knowledge and voluntary participation in agreement to commit illegal act, and aiding and abetting, which requires "community of unlawful intent").

8

Section 2's language and jurisprudence indicate that a non-physician can be properly charged with aiding and abetting a physician, and a physician who signed the dispensing order can be charged with aiding and abetting others who assist in the illegal dispensation of the drugs. Specifically, Section 2 provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him *or another* would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2. (emphasis added).

The words "or another" in Section 2(b) indicate that "Congress sought to extend criminal liability to defendants...who cause an intermediary to commit criminal acts where the intermediary, though innocent of the substantive offense, has the capacity to commit that offense and the causer lacks such capacity...In causing an innocent intermediary to commit a criminal act, the causer adopts not only the intermediary's act but his capacity [to commit the crime]." *United States v. Tobon-Builes*, 706 F.2d 1092, 1100-01 (11th Cir. 1983) (internal quotations omitted); *see also United States v. Lester*, 363 F.2d 68, 73 (6th Cir. 1966), *cert. denied,* 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967); 18 U.S.C. § 2 historical and statutory note ("[o]ne who puts in motion or assists in the illegal enterprise or causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense.").

Thus, in order to violate Section 2(b), "the government must prove that the defendant had the mental state necessary to violate the underlying criminal statute and that the defendant 'willfully caused' another to commit the necessary act...The government need not prove that someone other than the defendant was guilty of the substantive crime....The intent of the person

actually performing the proscribed act is immaterial in a section 2(b) prosecution." *United States v McGee*, 291 F.3d 1224, 1226-27 (10th Cir. 2002) (internal citations omitted).

It is clear that a jury may find that a physician dispensed the drugs and that co-defendants were guilty as principals or guilty of aiding and abetting the illegal dispensation, even if the jury finds that the physician or other registrant was not guilty.

### 3.     *Need for Expert Testimony*

Regarding their third sufficiency of evidence claim, the Defendants argue that the Government's failure to present any expert testimony on legitimate medical purpose warrants a judgment of acquittal because the combination of drugs at issue are typically prescribed for chronic pain treatment; dosage was not excessive; and the Defendants provided expert testimony on the issue.

However, Fifth Circuit jurisprudence clearly holds that expert testimony is not always necessary to establish that a physician is acting for other than legitimate medical reasons. *United States v. Chin*, 795 F.2d 496, 503 (5th Cir. 1986) (citing *United States v. Rosen*, 582 F. 2d 1032,1037 n.10 (5th Cir. 1978)).  Furthermore, the jury is not required to follow the opinions of experts who do testify.  Rather the jury may "consider all of the facts and circumstances surrounding the prescribing as related by lay witnesses." *Chin*, 795 F. 2d at 504 (citing *United States v. Bartee*, 479 F.2d 484, 488 (10th Cir. 1973)).  Courts have held that facts and circumstances revealed through lay testimony may be so clear that the jury can determine that prescriptions were not issued for legitimate medical purposes without the need for expert testimony. *See United States v. Polito*, 1997 WL 178879, at *5 (6th Cir. 1997); *United States v. Jamieson*, 806 F.2d 949, 951 (10th Cir. 1986); *Chin*, 795 F.2d at 503-04.  A review of the

evidence presented by the Government, as discussed in Section II.B.1 above, reveals that it was reasonable for a jury to find that no legitimate medical purpose existed through the testimony of lay witnesses in this case.

**C.      Count One- Multiple Conspiracies**

The Defendants claim that reversal of the conspiracy conviction is warranted because evidence presented at trial indicates the existence of at least two separate conspiracies, whereas the Government tried the case alleging one conspiracy.  The Defendants contend that judgment of acquittal is warranted whether the issue is presented in terms of insufficiency of evidence, duplicity, or fatal variance between the superseding indictment and the evidence presented at trial.  Specifically, the Defendants contend that the single conspiracy alleged in the indictment requires proof of the continuing involvement of one physician-registrant, but evidence presented at trial indicated that for a period of time no conspiring physician worked at the clinics.  The gap in time, from Dr. Mason's resignation in October 2000 to Dr. Guenther's hiring in 2002, created at least two separate and distinct conspiracies.  The defendants contend that this variance between allegations in the indictment and evidence presented at trial was highly prejudicial because the earlier conspiracy would have been barred by the statute of limitations and thus related evidence could not have been admitted as relevant at trial.

The argument regarding duplicity was previously raised by the Defendants in a pretrial motion, which the Court rejected (Rec. Doc. 273).  The Court again rejects this argument for the reasons previously stated.  The Court also finds that evidence presented at trial supports a single conspiracy and is consistent with the allegations contained in the indictment.  Prejean, her family members, staff and corporate entities operated a continuous illegal scheme to achieve a common

goal under the same corporate names in the same buildings and clinics throughout the relevant time period spanning from 1998 to 2005. Throughout this period, Prejean was able to solidify and expand the conspiracy by limiting information available to doctors, requiring doctors to see patients in shorter periods of time, prescribing stronger and higher quantities of drugs to patients, and finding doctors who supported the objectives or goals of the conspiracy. The goal of these co-conspirators did not change with the arrivals and departures of various doctors. While a non-physician must conspire with someone authorized to write prescriptions in order to violate 21 U.S.C. § 841, *United States v. Albert*, 675 F.2d 712, 715-16 (5th Cir. 1982), simply because there was a gap in time when a physician registrant was not a participant and Prejean and her co-conspirators could not commit a violation of Section 846 without a physician or other registrant's "participation" does not automatically terminate the conspiracy. The Government presented evidence at trial that during the time that no physicians were employed at the clinics, Prejean, family members and the legal entities used medical residents' hospital DEA registration numbers through fraud and deceit to prescribe and dispense medications, even dispensing directly to patients without a doctor's issue of a prescription. As long as the Defendants continued their common unlawful scheme to illegally dispense controlled substances, the single conspiracy continued to exist.

     **D.**     **Counts 7-27 Aiding and Abetting**

     Regarding their allegation concerning the aiding and abetting counts, the Defendants first state that the superseding indictment was defective because it impermissibly charged Prejean and various entities as principals and the physicians as aiders and abettors. The Defendants contend that though the indictment could charge Prejean and the entities with aiding and abetting the

physician in the illegal dispensation of controlled substances or conspiring with the physicians to accomplish the act, only physicians can be legally responsible under Section 841(a) for the illegal dispensation of controlled substances and thus, they are the only parties who can be principals. Second, the Defendants argue that when the Court instructed the jury on these substantive counts, it constructively amended the indictment to permit conviction on offenses that were not presented to the grand jury or contained in the indictment.

The Court rejects this argument for reasons set forth in Section II.B.2 of this Order. Section 2 "simply makes punishable as principal one who aids or abets the commission of a substantive crime." *Walker*, 621 F.2d at 166 (internal citations omitted). A non-physician can be properly charged with aiding and abetting a physician, and a physician who signed the dispensing order can be charged with aiding and abetting others who assist in the illegal dispensation of the drugs.[11] Thus, it was proper to charge each of the Defendants as principals and as aider and abettors. The Court's charge was not a constructive amendment. A constructive amendment occurs when the jury is permitted "to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *United States v. McGilberry*, 2007 U.S. App. LEXIS 4145, at *12 (5th Cir. Feb. 21, 2007) (quoting *United States v. Holley*, 23 F.3d 902, 912 (5th Cir. 1994)). In this case, the Court instructed the jury exactly as charged in the superseding indictment: Prejean, the clinics and the pharmacies dispensed the drugs along with

---

[11]   The Fifth Circuit holds that "under Title 21 of the Code, a doctor who administers or prescribes a controlled substance in an unlawful manner is to be indicted for dispensing it rather than distributing it." *United States v. Thompson,* 624 F.2d 740, 742 (5th Cir. 1980) (reaffirming holding of *United States v. Leigh*, 487 F.2d 206 (5th Cir. 1973)); *see also United States v. Harrison*, 628 F.2d 929 (5th Cir. Unit B. 1980). Thus, the indictment was required to use the word "dispense" in Counts 2 through 27 according to binding Fifth Circuit precedent.

the physicians and each aided and abetted the other.

## III.      MOTION FOR A NEW TRIAL

Defendants next argue that the Court should grant a new trial based on two grounds, inadequate or defective jury instructions and prejudicial admission of evidence.  These will be discussed in turn.

### A.      Applicable Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A district court's discretionary power to grant a new trial "should be exercised infrequently by district courts, unless warranted by 'exceptional' circumstances."  *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (internal citations omitted); *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (internal citation omitted).  The standard for considering a motion for a new trial differs from the standard applicable when reviewing a motion for judgment of acquittal, as the court may weigh the evidence and assess witness credibility when considering the former motion.  *See United States v. Fuchs*, 467 F.3d 889, 909-910 (5th Cir. 2006); *Robertson*, 110 F.3d at 1117 (citing *Tibbs v. Florida*, 457 U.S. 31, 37-38, 102 S. Ct. 2211, 72 L.Ed.2d 652 (1982) and commenting that new trial motion is reviewed under "more lenient standard").  However, the court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable."  *Robertson,* 110 F.3d at 118.  "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."  *Id.*; *see also Fuchs*, 467 F.3d at 910 (citing *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005)).  For the reasons stated below, the Court does

not find that the evidence preponderated heavily against the verdict and a new trial is therefore warranted.

## B.      Jury Instructions

### 1.      Conjunctive vs. Disjunctive Instruction for Violations of Sections 841 & 846

The Defendants first claim that the Court improperly instructed the jury that it could find the Defendants guilty of violating Sections 841 and 846 if the Government proved that the controlled substances were prescribed or dispensed *either* (1) outside the usual course of professional practice *or* (ii) not for a legitimate medical purpose.  The Defendants argue that using a disjunctive form of instruction is contrary to the law of this Circuit and inconsistent with other Circuits' rulings requiring the jury to find that drugs were dispensed outside the course of medical practice *and* without legitimate medical purpose.

Section 841 provides, in part: "Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally– (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance...."  21 U.S.C. § 822(b) authorizes practitioners to dispense controlled substances "to the extent authorized by their registration and in conformity with other provisions of this title."

21 C.F.R. § 1306.04, states the extent of this authorization:

(a) *A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.*  The responsibility for a proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.  An order purporting to be a prescription *issued not in the usual course of professional treatment or in legitimate and authorized research* is not a prescription within the meaning and intent of Section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties

15

provided for violations of the provisions of law relating to controlled substances.

(emphasis added).  The first sentence of Section 1306.04(a) thus makes clear that in order to legally prescribe a controlled substance, two conditions must be fulfilled: (i) it must be issued for a legitimate medical purpose *and* (ii) the prescribing practitioner must be acting in the usual course of professional practice.   If one of these conditions is not satisfied, the prescription is clearly not effective and therefore is unauthorized.

Moreover, the Fifth Circuit recently rejected the Defendants' argument.  *Fuchs*, 467 F.3d at 900-01.  The court commented that prior Fifth Circuit jurisprudence used these two phrases interchangeably and current law set forth by the United States Supreme Court holds that a physician can violate Section 841 when his or her activities fall "outside the usual course of professional practice."  *Id.* at 901 (referring to *United States v. Outler*, 659 F.2d 1306, 1309 (Former 5th Cir. 1981) and *United States v. Moore*, 423 U.S. 122, 124 (1975)).

Additionally, this Court finds persuasive the reasoning of *United States v. Nelson*, 383 F.3d 1227 (10th Cir. 2004), which held that an instruction using the disjunctive form incorrectly stated the law and questioned whether any difference actually existed in the meaning of the two phrases:

> It is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances within the usual course of medical practice but without a legitimate medical purpose.  Similarly, it is difficult to imagine circumstances in which a practitioner could have prescribed controlled substances with a legitimate medical purpose and yet be outside the usual course of medical practice.

*Nelson,* 383 F.3d at 1231.  Other courts have reasoned similarly.  *See, e.g., United States v. Kirk,* 584 F.2d 773, 784 (6th Cir. 1978) ("There is no difference in the meanings of the statutory phrase[s]...."); *United States v. Rottschaeffer*, 2006 U.S. App. LEXIS 10504, at *5-6 (3rd Cir. Apr.

27, 2006) (holding prosecution acted well within law when it defined physician defendant's crimes in terms of prescribing drugs "for no legitimate medical reason"), and the Fourth Circuit has stated that the "without a legitimate medical purpose standard" is actually more strict than the "outside the usual course of professional practice standard" set forth by the United States Supreme Court in *Moore. United States v. Cuong*, 18 F.3d 1132, 1138 (4th Cir. 1994); *see also United States v. Hurwitz*, 459 F. 3d 463, 475 (4th Cir. 2006).

Based on the plain reading of the statutory language, binding United States Supreme Court and Fifth Circuit precedent, and jurisprudence from other Circuits, the instruction in this case correctly states the law.

### 2.     *Good Faith Instruction*

The Defendants also contend that the Court's instruction on good faith was not proper because the Court only gave the good faith instruction for the substantive counts, but neglected to give the instruction for the conspiracy count.

However, a good faith instruction for a conspiracy charge is not proper and has no applicability to the elements of this charge.  Again, the elements that the Government must prove in order to establish that the Defendants participated in a conspiracy include: (i) that two or more persons, including one who is a registrant, directly or indirectly, reached an agreement to dispense Schedule III or IV controlled substances not for a legitimate medical purpose or outside the usual course of medical practice; (ii) that the defendant knew the unlawful purpose of the agreement; (iii) that the defendant joined in the agreement willfully, that is, with intent to further its unlawful purpose; and (iv) that overall scope of the conspiracy involved Schedule III or Schedule IV controlled substances.  The Court places particular emphasis on elements (ii) and (iii).  If the jury

must find that the defendant knew the unlawful purpose and the defendant joined the conspiracy with intent to further the unlawful purpose, a good faith instruction has no place in the charge.

The Court notes, however, that it did find the good faith instruction appropriate in the jury charge regarding the substantive offense of illegal dispensation of a controlled substance, and the Court included the instruction for these counts.[12]  *United States v. Hurtwitz*, 459 F. 3d 463 (4th Cir. 2006), cited by the Defendants in support of their argument, contains a different set of facts which make it inapplicable to this case.  In *Hurwitz*, the Fourth Circuit found that the defendant physician was entitled to a new trial because the district court not only refused to include a good faith instruction regarding a violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq., but it also found that good faith was inapplicable to Controlled Substances Act violations and instructed the jury that good faith was not relevant to those charges.  *Id*. at 483.  In the present case, the Court gave the good faith instruction for the substantive offense.  In any event, "[f]ailure to give an instruction that is covered adequately elsewhere in the charge is not reversible error."  *United States v. Jones*, 642 F.2d 909, 915 (5th Cir. 1981); *see also United States v. Giraldi*, 86 F.3d 1368, 1376 (5th Cir. 1996) (citing *United States v. Storm*, 36 F.3d 1289, 1294 (5th Cir. 1994), *cert. denied*, 131 L.Ed.2d 725, 115 S.Ct. 1798 (1995)).

---

[12]  The specific instruction given to the jury provides as follows:

> A controlled substance is prescribed by a physician in the usual course of professional practice, and therefore lawfully, if the substance is prescribed by him or her in good faith, medically treating a patient in accordance with a standard of medical practice generally recognized and accepted in the United States.  Good faith in this context means an honest effort to prescribe for a patient's condition in accordance with the standards of medical practice generally recognized or accepted in this country.

(Jury Instructions 32.)

Lastly, defense counsel did not raise an objection to the jury instructions on this point during trial.  Rule 30 of the Federal Rules of Criminal Procedure states that "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."  Fed. R. Crim. P. 30.  Timeliness and specificity "enables a trial court to correct any instructional mistakes before the jury retires and in that way help to avoid the burdens of an unnecessary retrial." *Jones v. United States,* 527 U.S. 373, 387-88, 119 S.Ct. 2090 (1999).  If an objection is not timely made at trial, a complaint about jury instructions will not be considered absent plain error.  *United States v. Colmenares-Hernandez,* 659 F.2d 39, 41 (5th Cir. 1981).  As discussed above, the jury instruction regarding good faith was not plain error.

### C.    Prejudicial Admission of Evidence

The Defendants also contend that a new trial is warranted because prejudicial evidence was erroneously admitted, leading the jury to make improper inferences.  The Defendants argue that questions to witnesses and references or implications made during their examination constitute error mandating a new trial.  Specifically, the Defendants argue that the following admitted evidence and consequent improper inferences warrant a new trial: (i) the Government's suggestions that Prejean did not properly report income during questioning of witnesses and argument; (ii) the Government's questioning of a witness regarding a patient death at the clinic; (iii) the Government's efforts during cross examination and closing argument to link a patient witness's liver cancer to acetaminophen prescribed by the clinics; and (iv) the Government's calling as witnesses the family members of clinic patients.

### 1.    *Applicable Law*

Rule 401 of the Federal Rules of Evidence provides that evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  All relevant is admissible, and conversely, all evidence that is not relevant is not admissible.  Fed. R. Evid. 402.  In addition to ensuring that evidence admitted meets the standard announced above, the court also must make a determination whether or not to still exclude the relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

A district court has broad discretion regarding its decisions on both the relevancy and admissibility of evidence.  *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989).  However, "evidence in criminal trials must be strictly relevant to the particular offense charged."  *Id.* (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083, 93 L. Ed. 2d 1337 (1949)) (internal quotations omitted).  Thus, "[t]he admission of irrelevant facts that have a prejudicial tendency is fatal to a conviction, even though there was sufficient relevant evidence to sustain the verdict."  *Id.* (quoting *United States v. Allison*, 474 F.2d 286, 289 (5th Cir. 1973)).

### 2.	*Suggestion that Income was Greater than the Defendants Alleged*

The Court agrees with the Government that it was not improper to suggest that Prejean's income was greater than the amount alleged by Defendants.  The Government seized approximately $1.6 million in cash from Prejean's residence and its analysis of her gross earnings revealed a substantial cash stream.  Evidence admitted at trial revealed a lack of accountability of funds earned during the period of time in which the conspiracy operated and showed that cash was

used in multiple financial transactions with no identifiable source.

### 3.    *Questioning Regarding the Deaths of Clinic Patients*

The Court also rejects the Defendant's second argument that the Government's questioning of a witness regarding patient deaths at the clinic warrants a new trial.  The parties do not dispute that they entered into a pre-trial oral agreement which provided that the Government would not seek to prove any particular patient's death was directly linked to a clinic prescription.  As a result, the Defendant did not seek *in limine* relief from the Court.  However, during the Government's direct examination of Devin Johnson, a clinic employee, a reference was made to a clinic patient's death.  The exchange at issue follows:

> [Government]:   Did you ever as you watched these patients see any changes in them that you noticed, you Devin Johnson noticed?
> [Witness]: Yes, sir.
> [Government]:  And describe that to the jury, tell us what you would see.
> [Witness]:  Weight change, discoloration, things of that sort.
> [Government]:  Any of those patients that you knew die?
> [Witness]:  Yes, sir.
> [Government]:  Give me some names, names of any? Gary...

(Tr. 07/07/06).

At that point, defense counsel immediately voiced an objection, and the parties approached the bench.  After the Defendants moved for a mistrial, the motion was denied.  When the Court resumed trial, a curative instruction was immediately given to the jury, charging them to disregard the exchange and explaining that there was no evidence linking the clinics to any patient deaths.  Specifically, the Court gave the following instruction:

> ...I want to just have a word with you about the evidence.  Before [counsel] came to the bench at the request of the court, the witness was testifying and the question was asked toward the end of the testimony whether she knew a lot of folks there and whether anybody had died.  I need to discuss this with you a little bit more.

The witness had been at the clinic for over three years.  She, by her own testimony, indicated that she likes people, she is a very gregarious person, very friendly person obviously, and she has kept up with people.  Through her period of time she has seen thousands of individuals.  At no doubt during that three-year period there may have been people who got the measles or mumps or sore throat or things of that sort, that had nothing to do with the clinic.

It wouldn't surprise me if some of those folks became fathers or mothers during that period of time, that also had nothing to do with the clinic.  So births, illnesses, car wrecks, nothing at all to do with the clinic.  And likewise, with regard to deaths, unfortunately people die, they are born and they die.  Over a three year period of time thousands and thousands of people, I can assume, that there will be births and there will be deaths.  But the deaths that were mentioned, there is no evidence to link them at all with the clinic.  So I ask you to disregard that evidence.  I particularly draw your attention to it because I don't want it to be at all considered by you in connection with this case.  So I ask you to disregard that.

(Tr. 07/08/06).

In *United States v. Schuster*, 777 F.2d 264, 270 (5th Cir. 1985), *vacated, remanded and appeal dismissed on other grounds*, 778 F.2d 1132 (5th Cir. 1985), which involved a conviction of a physician for conspiracy and unlawful dispensation and distribution of controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), the deaths of two patients were mentioned during closing argument and one patient's death certificate was introduced as evidence over the defendant's objection.  The Fifth Circuit determined that the death certificate should not have been admitted as evidence because the toxicology report indicated that no trace of the drugs prescribed by the defendant physician were present in the patient's body at the time of his death. *Id.*  The court also determined that references to the deaths also should not have been made.  *Id.* However, the Fifth Circuit found that these errors did not warrant reversal.  *Id.*  It found that the reference to death made by a medical witness when the death certificate was introduced into evidence was "very brief" and death was not "dwelled upon."  *Id.*  "The import of the medical

witness's testimony was that the defendant prescribed the drugs with no legitimate medical purpose." *Id.* The court stated that "[i]n a proper setting, such evidence might be relevant and admissible as indicative of a cavalier attitude toward drugs dispensed and the consequences of their free use." *Id.* (citing *United States v. Blanton*, 730 F.2d 1425 (11th Cir. 1984)).

The Court notes that the remarks regarding a patient death in this case were limited to one brief reference that did not rise to the level in *Schuster*. The Court also gave a detailed curative instruction to the jurors. "[E]vidence withdrawn from the jury with a direction by the court that it be disregarded may not be the basis of reversible error unless the remark is so highly prejudicial as to be incurable by the trial court's admonition." *Walker*, 621 F.2d at 168 (quoting *United States v. Klein*, 546 F.2d 1259, 1263 (5th Cir. 1977)). That is not the case here. Accordingly, the reference made to a patient death does not rise to the level of prejudice required by the Fifth Circuit to warrant a new trial.

### 4.      Whether the Government Improperly Linked Witness's Cancer to Medicine Prescribed by Clinic

Third, the Court does not find that the Government improperly linked a clinic patient's liver cancer to acetaminophen prescribed at the clinics either during her cross examination or closing argument. The witness, Catherine Bass, testified during direct examination by Defendants regarding her treatment at the clinics and mentioned her bout with liver cancer. During her cross-examination, the Government introduced evidence indicating a connection between persistent use of the type of drug dispensed by the clinic to Ms. Bass and severe liver problems. The Government also stated in closing argument that Ms. Bass had a right to

information on this link.[13]  The Court determines that a rational connection exists between failing

to inform the patient on a drug's effects and the charged offense.  This evidence was relevant, and

hence admissible, because it demonstrated that the patient did not receive individualized

treatment and drugs were not prescribed for a legitimate medical purpose.  The Court does not

find that the statements' probative value was outweighed by prejudice to the Defendants.

### 5.        Testimony of Clinic Patients' Family Members

Lastly, the Court finds that the testimony of clinic patients' family members regarding

their relatives' drug use and the family members' repeated attempts to warn Prejean, staff and

physicians provided direct evidence that the Defendants knew that there was no legitimate

medical purpose in providing the prescriptions and even tried to conceal their criminal activities.

For example, the testimony of Debbie Smith, including taped conversations, revealed that she

made numerous unsuccessful attempts by telephone and letter to speak with Dr. Cullins and Ms.

Prejean regarding her son's drug abuse and his complete lack of need for such medicines,

including her fear that he would soon die due to continued abuse of drugs prescribed by clinic

physicians.  Ms. Smith testified that she went to the clinic and refused to leave until she spoke

with Dr. Cullins, but she was forcibly removed from the premises.

The testimony of clinic patients' family members was both relevant and admissible as it

contradicted the Defendants' argument that they ran a legitimate business where no intentional

effort was made to provide controlled substances outside the course of professional practice and

---

[13]  During closing argument, the Government attorney stated that "if [Ms. Bass] had been
told about the liver problems maybe she could have made her own determination...But all [she
and other patients] got was a prescription and they were emptied of their money and nobody
could care less."

without a legitimate medical purpose and that no conspiracy existed.

## IV.  CONCLUSION

Accordingly, for all of the above stated reasons, the Defendants' Joint Motion is DENIED.

New Orleans, Louisiana, this 14th day of March, 2007.

UNITED STATES DISTRICT JUDGE