UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 05-130 |
| CHERLYN R. ARMSTRONG, ET AL | * | SECTION "L" |

ORDER AND REASONS

Before the Court is Cherlyn Cookie Armstrong Scherer Prejean ("Prejean") and the Scherer Corporate Defendants'[1] (together, the "Defendants") Joint Motion for Relief from the Preliminary Order of Forfeiture and to Set Aside or Modify the Jury's Forfeiture Verdict (Rec. Doc. No. 396). For the following reasons, the motion is DENIED.

**I. Factual and Procedural History**

On July 25, 2006, a federal jury convicted the Defendants of numerous violations of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and the federal money laundering statute. On July 26, 2006, a forfeiture hearing was held. At the request of the Government, the jury considered whether various assets of the Defendants were linked to the offenses for which the Defendants were convicted after the Court instructed the jury on the forfeiture counts, evidence was presented, and both the Defendants and the Government presented arguments to the jury. The jury concluded that all of the nine real properties, the two automobiles and the currency

---

[1] The Scherer Corporate Defendants are the following entities: Scherer Physicians Weight Loss Center, Inc.; Scherer's Medical Center, Inc.; Scherer's Slidell Medical Center, L.L.C.; Scherer's Gretna Medical Center, L.L.C.; Mia's Pharmacy, L.L.C.; Mia's Pharmacy Slidell, L.L.C.; Bella Mia Holdings, L.L.C.; C.C. Armstrong Co., L.L.C.; and the Ballard Co., L.L.C.

seized from the Defendant's residence were subject to forfeiture under the drug and money laundering forfeiture statutes. The jury also determined that a money judgment in the amount of $10,617,331.76 was appropriate under both the drug and money laundering forfeiture statutes, though the Government had requested a money judgment of $16,620,555.45.

On August 2, 2006, the Government filed a Motion and Brief for Issuance of a Preliminary Order of Forfeiture pursuant to the jury's forfeiture verdict. The Court issued the Preliminary Order of Forfeiture on August 4, 2006. The Defendants moved to vacate the Order, and their motion was subsequently denied by the Court. However, the Court permitted the Defendants to file an opposition to the Preliminary Order by September 6, 2006.

The Defendants make three main arguments in their motion contesting the forfeiture of assets: (i) insufficiency of evidence underlying the jury's forfeiture verdicts; (ii) impropriety of the jury deciding the amount of money subject to forfeiture and general limitations on the jury's findings; and (iii) incorrectness of the determination that several specific properties are forfeitable.

**I.  Sufficiency of Evidence**

   *A.     Parties' Arguments*

The Defendants first contend that there was insufficient evidence to support the jury's forfeiture verdicts. The Defendants claim that the Government offered no evidence that clean funds were used to assist in laundering dirty funds. They further allege that no evidence was presented linking the forfeiture of the $1.3 million in currency found at Prejean's home to money laundering activity so that the jury's verdict must be set aside.

In response, the Government contests the Defendants' suggestion that the jury

determined that all of the funds were tainted. The Government had asked the jury to find forfeitable $16,620,555.45, the total amount of cash deposits from the clinics into the Defendants' bank accounts from 2001 to April 2005, but the jury found only $10,617,331.76 was forfeitable . The Government also contends that it met its burden in proving $1.3 million found in Prejean's home was forfeitable through DEA agent testimony, documentary evidence, and pictures taken at the time of the search of Prejean's home.

### B.     *Law and Analysis*

Before addressing the parties' arguments, it is necessary to examine the standard of review the Court uses when considering the sufficiency of evidence and the criminal forfeiture statutes at issue, including the elements that the jury is required to find exist in order to conclude that property must be forfeited.

#### 1.     **Standard of Review**

Since the "preponderance of evidence" standard applies to forfeiture proceedings, *see United States v. Myers*, 21 F. 3d 826 (8th Cir. 1994); *United States v.Voigt*, 89 F.3d 1050 (3rd Cir. 1996); *United States v. Smith*, 966 F.2d 1045,1050-53 (6th Cir. 1992), the standard of review for a motion to set aside the jury verdict of forfeiture is whether the evidence was sufficient to permit a reasonable jury to conclude that the Government has proven, by a preponderance of the evidence, that the property is subject to forfeiture. *United States v. Witiig,* 2006 U.S. Dist. LEXIS, at *5-6 (D. Kan. Jan. 3, 2006) (quoting *United States v. Loe*, 49 F. Supp. 2d 514, 517 (E.D. Tex.1999), *aff'd in part, rev'd in part and remanded on other grounds*, 248 F.3d 449 (5th Cir. 2001)). With this standard in mind, it is appropriate to turn to the applicable law.

### 2. Applicable Forfeiture Statutes and Related Law

In view of the jury's finding that the Defendants were guilty of violations of the Controlled Substances Act and the federal money laundering statute, two statutes provide for the forfeiture of property in this case, 21 U.S.C. § 853(a), which regards forfeiture based on violations of federal drug laws, and 18 U.S.C. § 982(a)(1), which concerns forfeiture based on violations of federal money laundering laws.

#### a. *21 U.S.C. § 853(a)*

21 U.S.C. § 853(a) provides that a person convicted of a federal drug crime shall forfeit any and all property obtained directly or indirectly as the result of such violation, and all property used, or intended to be used, in any manner or part to commit, or to facilitate the commission of, such violation. The provision is "plain and unambiguous: all assets falling within its scope are to be forfeited upon conviction, with no exception existing for the assets used to pay attorney fees- or anything else, for that matter." *United States v. Monsato*, 491 U.S. 600, 607 (1989).

Facilitation requires that there be a "substantial connection between the property and the underlying criminal activity." *United States v. Schifferli*, 895 F.2d 987, 989 (4th Cir. 2000) (internal citations omitted). The property's role in the illegal activity is not required to be "integral, essential or indispensable." *Id.* at 990. Instead, "the term 'facilitate' implies that the property need only make the prohibited conduct 'less difficult or more or less free from obstruction or hindrance.'" *Id.* (quoting *United States v. Premises Known as 3639-2nd St., N.E.*, 869 F.2d 1093, 1095-97 (8th Cir. 1989)).

#### b. *18 U.S.C. § 982(a)*

18 U.S.C. § 982(a) provides that a person convicted of a conspiracy to money launder shall forfeit all property, real or personal, involved in the violation or that is traceable to such property. In *United States v. Tencer*, 1997 U.S. App. LEXIS 12778, at *38 (5th Cir. Mar. 10 1997), the Fifth Circuit held that merely pooling tainted and untainted funds in a bank account, does not, without more, render the entire account subject to forfeiture. But when the untainted funds are commingled with legitimate funds in order to facilitate laundering and enable it to continue, the entire amount may be forfeited. *Id.* at *38-41. Thus, the Government must demonstrate that the defendant pooled the funds to disguise the nature and source of the scheme. *Id.*

Additionally, *Tencer* recognized that some courts outside the Fifth Circuit require the Government to demonstrate a substantial nexus between the money laundering offense and the property forfeited, while others only require some nexus. *Id.* at *39. One district court in the Fifth Circuit has found that *Tencer* implicitly requires a substantial nexus, though *Tencer* does not explicitly specify the level of nexus required to sustain forfeiture under the facilitation concept. *Loe*, 49 F. Supp. 2d at 519.

In contrast to "property involved" in a money laundering offense, "property traceable" means property where the acquisition is attributable to the money laundering scheme rather than from the money obtained from untainted sources." *Id.* at 520 (citing *United States v. Bornfield*, 145 F. 3d 1123, 1135 (10th Cir. 1998)). "In other words, proof that the proceeds of the money laundering transaction enabled the defendant to acquire the property is sufficient to warrant forfeiture as property 'traceable to' the offense." *Loe*, 49 F. Supp. 2d at 50.

    **3.**    **Analysis**

With these statutes in mind, the Court addresses the Defendants' sufficiency of evidence argument. At the forfeiture hearing, the Government did indeed argue that all of the Defendants' assets facilitated or were proceeds of controlled substance drug violations and that all of these assets, including cash deposited from 2001 through 2005 into approximately twenty-eight bank accounts owned by the Defendants, were involved in or traceable to the Defendants' conspiracy to money launder. However, the jury concluded that a portion of revenue generated by the clinics and pharmacies' operation was not subject to forfeiture. While the Government requested that the jury find $16, 620,555.45 subject to forfeiture under 18 U.S.C. § 982(a) and/or 21 U.S.C. § 855(a), the jury decided that only $10,617,331.76 of this amount was forfeitable. Thus, the Defendants' contention that the jury determined that all assets were tainted is incorrect, and there was sufficient evidence for the jury's findings. Moreover, the special verdict forms reveal that the jury considered each property at length and made detailed findings as to whether the property facilitated or was the proceeds of the drug violations and the amount of value that was attributable to the drug violations. It also considered whether each individual property was involved in or traceable to the money laundering offense.

Additionally, the Defendants' argument that the forfeiture of $1.3 million found in Prejean's home is not supported by evidence must also be rejected. Evidence at trial supports a finding that this property must be forfeited. For example, DEA Agent Ron Stark testified that agents recovered deposit slips for various bank accounts attached to some currency waiting to be deposited, some of the money was wrapped in Regions Bank plastic bags and some was marked with Bank One account numbers. Samuel Zechenelly, a Special Agent with the Internal Revenue Service's Criminal Investigation Unit who was present during the search of Prejean's

home, testified similarly. As a conviction for conspiracy to money launder also includes a conspiracy to attempt to money launder, *see* 18 U.S.C. § 1956(a)(1), evidence firmly supports the jury's forfeiture verdict with regard to the cash seized from Prejean's home by a preponderance of evidence standard.

## II. Propriety of Forfeiture Determinations by Jury

### A.     *Parties' Arguments*

The Defendants state that under Fed. R. Crim. P. 32.2(b)(1), the Court, and not the jury, determines the extent of property interest subject to forfeiture, including the amount that a defendant is required to pay if a personal money judgment is sought. Thus, the jury had no authority to make these determinations in this case, and its decision is not entitled to the Court's deference.

The Government argues that though Fed. R. Crim. P. 32.2(b)(1) refers to the court's role in making forfeiture determinations, if a jury is requested for the forfeiture hearing, then the jury makes those same forfeiture determinations under Rule 32.2(b)(4).

### B.     *Law and Analysis*

Rule 32.2(b)(1) provides the general rule on the procedure a court must follow regarding forfeiture of property after the defendant is convicted of the crimes charged:

> **In General.** As soon as practicable after a verdict or finding of guilty...on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute...If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay....

Fed. R. Crim P. 32.2(b)(1). Rule 32.2(b)(4), however, provides for instances when a jury makes

the forfeiture determination: "Upon a party's request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." Fed. R. Crim. P. 32.2(b)(4).

Though a jury may determine that a specific property is forfeitable or assign a value to property, "this does not amount to a finding by the jury of the extent of the defendant's interest in the forfeited property." *Wittig*, 2006 U.S. Dist. LEXIS 55, at *10. In this case, the jury was specifically instructed that its only responsibility was to decide whether the Government sufficiently established the requisite nexus between the property and the Defendants' violations, and it was told not to concern itself with anyone's ownership interest in the property. *See* Jury Forfeiture Instructions 5; *see also Wittig*, 2006 U.S. Dist LEXIS 55, at *10. The extent of a defendant's ownership interest in the property is examined at an ancillary hearing. *See id.* and Section III.B, *infra*.

That being said, the Court determines that the decision regarding the amount of the money judgment was properly referred to the jury. In essence, the Defendants contend that Rule 32.2(b)(4) applies only to the second sentence in Rule 32.2(b)(1) containing the "nexus" language, and not to Rule 32.2(b)(1)'s third sentence. However, the proper interpretation is that the third sentence of Rule 32.2(b)(1) speaks to a specific type of property referred to in the second sentence of Rule 32.2(b)(1). A determination of whether all, some or none of the money sought to be forfeited is linked to the offense for which the defendant was convicted necessarily entails establishing a nexus between the property and the offense. Thus, Rule 32.2(b)(4) is applicable to the third sentence in Rule 32.2.(b)(1) and a jury may determine the amount of money subject to forfeiture, if requested by a party in the case. *See also United States v. Huber*,

462 F.3d 945, 949 (8th Cir. 2006) (rejecting argument that jury should find amount of money subject to forfeiture beyond a reasonable doubt and affirming application of preponderance of evidence forfeiture instruction); *Tencer*, 1997 U.S. App. LEXIS 12778, at *3; *United States v. Soreide*, 461 F.3d 1351, 1352 (11th Cir. 2006).

### III.  Forfeiture of Specific Properties

#### A.     *The Parties' Arguments*

The Defendants' third claim regards the improper forfeiture of specific properties. Specifically, the Defendants refer to two real properties located on Briarheath Drive in New Orleans, Louisiana.  The Defendants claim that 7340 Briarheath was transferred to a third party in exchange for a mortgage and thus is no longer owned by the Defendants.  As a result, the Government must seek substitute property, and not the property sold to a third party.  Secondly, the Defendants argue that 7506 Briarheath was purchased by Prejean's mother with funds she borrowed from Prejean through a note.  A third party, Prejean's sister, is servicing the debt on the property, so that the Government must seek substitute property.  Thirdly, the Defendants contend that evidence presented at trial indicated that the amount of money seized from Prejean's home was more than the $1,355,049.99 listed in the indictment and special verdict form.  The Defendants seek release of funds in excess of the forfeited amount.

The Government states that once a jury determines that the property is subject to forfeiture, the ancillary proceeding is the proper forum for determining the extent of a defendant's forfeitable interest in the property.  After the Court enters a preliminary order of forfeiture, the Government may petition the Court to order the forfeiture of substitute assets after showing the Court that the Defendants dissipated the assets subject to forfeiture.

Regarding the Defendants' claim for release of funds in excess of the forfeited amount seized from Prejean's home, the Government contends that the Court previously found $300,000 was reasonably related to the sum of untainted funds in a pretrial order and this amount has already been released to the Defendants. Thus, the Defendants' argument with regard to this issue is moot.

### B.      *Law and Analysis*

According to Fed. R. Crim. P. 32.2(c), after the court (or the jury) determines that property involved in the criminal offense for which the defendant was convicted is subject to forfeiture, any third party interest in all or part of the property is adjudicated in an ancillary proceeding.[2] *See also* 21 U.S.C. § 853(n)(2). At the ancillary proceeding, all potential third party claimants are given an opportunity to challenge the forfeiture by asserting a superior interest in the property. The proceeding does not involve relitigation of the forfeitability of property, but only the determination of whether any third party has a legal interest in the forfeited property.

Accordingly, the Defendants' claim that the Court should set aside the Preliminary Order of Forfeiture as to specific properties fails as premature. The proper forum to determine the extent of the Defendants' third party interest in the property is the ancillary proceeding, so that all third parties may participate and the Court may ensure that all property forfeited actually

---

[2] The notice provisions regarding criminal forfeiture ancillary proceedings are equivalent to notice provisions that govern civil forfeitures. The Government is required to take steps to provide notice to third parties. *See United States v. BCCI Holdings (Luxembourg) S.A. (In re Petition of Indosuez Bank),* 916 F. Supp. 1276 (D.D.C. 1996). Forfeiture becomes final and the Government is deemed to hold clear title to property if no third party subsequently files a claim after notice is given.

belongs to the Defendants.[3]  *See Wittig*, 2006 U.S. Dist. LEXIS 55, at *10 (stating that "a defendant does not have standing to object to forfeiture on the grounds that a third party owns the property" and "determination of the extent of a defendants's interest in the property is deferred until the ancillary proceedings").

Regarding the Defendants' claim for release of funds seized from Prejean's home in excess of the forfeited amount, the Court has already released such amounts.  On August 4, 2005, this Court issued an Order regarding release and exemption of assets from forfeiture to pay attorneys' fees, costs, and living expenses (Rec. Doc. 162).  The Court determined the amount of money to be released from forfeiture after a hearing was held.  At the hearing, the government submitted several exhibits into evidence, and the Court heard argument from both the Government and the Defendants.  The central issue determined by the Court was whether the Government had continued to establish probable cause to believe that all assets seized were derived from, or were used to facilitate, illegal drug transactions.[4]  The Court determined that some, but not all, of the Defendants' assets were traceable to such illegal transactions.  The Court released $300,000 of $1.6 million in funds seized by the Government when it searched Prejean's home, concluding that "[t]his amount is reasonably related to the sum of untainted funds...."  Accordingly, the Court has already released funds in excess of the forfeited amount and this argument is therefore moot.

---

[3] The Court ordered that such a hearing be held on March 29, 2007 (Rec. Doc. 447).

[4] At the time of the Court's Order, the indictment only charged the Defendants with illegal drug activities.  The indictment was superseded on January 13, 2006 to additionally charge the Defendants with money laundering (Rec. Doc. 217).  Thus, the Court only looked to whether the money facilitated or was the proceeds of the drug transactions and did not address the issue of whether the funds were traceable to or facilitated money laundering.

## IV. Conclusion

Accordingly, IT IS ORDERED that the Defendants' Motion From Relief From the Preliminary Order of Forfeiture and to Set Aside or Modify the Jury's Forfeiture Verdicts is DENIED.

New Orleans, Louisiana, this 14th day of March, 2007.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE